## FRIEDLANDER v. TEXAS AND PACIFIC RAILWAY COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF TEXAS.

No. 236. Argued April 4, 5, 1889. — Decided April 15, 1889.

A bill of lading, fraudulently issued by the station agent of a railroad company without receiving the goods named in it for transportation, but in other respects according to the customary course of business, imposes no liability upon the company to an innocent holder who receives it without knowledge or notice of the fraud and for a valuable consideration : and this general rule is not affected in Texas by the statutes of that State.

THE court stated the case in its opinion as follows :

Friedlander & Co. brought suit in the District Court of Texas, in and for the county of Galveston, against the Texas and Pacific Railway Company, to recover for the non-delivery of certain cotton named in an alleged bill of lading hereinafter described, of which they claimed to be assignees for value, their petition after counting upon said bill of lading, thus continuing :

"That the said defendant, fraudulently contriving to avoid its liability to these plaintiffs, pretends and alleges that the said cotton was not so delivered as in and by said bill of lading is recited and acknowledged, but that the said bill of lading was

executed without the receipt by its said agent of any of said cotton, all of which said pretences on the part of the defendant, plaintiffs allege are untrue; but they say that even if it be true that no cotton was delivered to said defendant as in and by said bill of lading is recited and acknowledged, yet is the defendant estopped from setting up that fact in defence of plaintiffs' cause of action upon said bill of lading, because these plaintiffs say that the said bill of lading was executed in form negotiable and transferable by indorsement under the usage and customs of merchants, and that these plaintiffs, relying upon the validity of said bill of lading in all respects and upon the facts therein stated, that said cotton had been delivered to said defendant as aforesaid, and that defendant had contracted to carry and deliver said cotton as aforesaid, advanced to the said Joseph Lahnstein and paid out upon his order and at his request and in consideration of his said transfer of said bill of lading to these plaintiffs the sum of eight thousand dollars on, to wit, the 10th day of November, 1883, and that said payment was made and advanced upon the faith of the recitals and effect of said bill of lading as a contract to deliver the cotton therein mentioned as aforesaid, and that if the said cotton was never received by defendant, yet ought it to be held to the terms of the said bill of lading for the indemnification of these plaintiffs for said payment, with interest thereon from the date thereof, because of the fraud practised by the said agent upon these plaintiffs in the issuance of said bill of lading in the ordinary form and manner wherein he was authorized by the defendant to act, and defendants are estopped to deny that said cotton was received as against the claims of these plaintiffs for damages on account of defendant's failure to comply with said bill of lading to the extent of eight thousand dollars, with interest thereon, at the rate of 8 per cent per annum, from the date of payment thereof as aforesaid; and if it be true, as alleged, that defendant received said cotton in said bill of lading mentioned, then plaintiffs claim of defendant the full value thereof, to wit, the sum of fifteen thousand dollars, with interest thereon from and after the 6th day of December, 1883, when and before which time defend-

ant should have delivered said cotton under said bill of lading, according to the true intent and meaning thereof."

Defendant demurred, and also answered, denying "all and singular the allegations in the petition contained." The case was subsequently removed to the Circuit Court of the United States for the Eastern District of Texas, whereupon by leave the defendant amended its answer by adding these further averments:

"That one E. D. Easton, on the 6th of November, 1883, was the station agent of defendant at Sherman station, in Grayson County, Texas, on the Eastern Division of defendant's line in Texas, and that as such agent he was authorized to receive cotton and other freight for transportation and to execute bills of lading for such cotton and other freight by him received for the purpose of transportation by defendant.

"That on the said 6th day of November, 1883, the said Easton, combining and confederating with one Joseph Lahnstein, did fraudulently and collusively sign a certain bill of lading purporting to be his act as agent of defendant, whereby he falsely represented that defendant had received from the said Joseph Lahnstein two hundred bales of cotton in apparent good order, to be transported from Sherman to New Orleans, La., and did deliver the said false bill of lading to the said Joseph Lahnstein; and defendant says that in point of fact the said bill of lading was executed by the said Easton fraudulently and collusively with the said Lahnstein without receiving any cotton for transportation, such as was represented in said bill of lading, and without the expectation on the part of the said Easton of receiving any such cotton; that the said pretended bill of lading was the one that is set out in the petition of the plaintiffs, and was false, fraudulent and fictitious, and was not executed by defendant nor by its authority, and that the said Easton only had authority as agent aforesaid to execute and deliver bills of lading for freights actually received by him for transportation."

The cause was submitted to the court for trial, a jury being waived, upon the following agreed statement of facts:

"1st. On November 16th, 1883, at Sherman station, in

Grayson County, Texas, on the Eastern Division of the Texas and Pacific Railway Company, E. D. Easton, agent for the defendant at said station, executed as such agent a bill of lading, of which a copy is hereinafter given, and delivered the same to Joseph Lahnstein, the person named in said bill of lading.

"2d. That said Easton was at the time and place aforesaid the regularly authorized agent of the defendant for the purpose of receiving for shipment cotton and other freight for transportation by defendant over and along its line from Sherman station aforesaid, and that said bill of lading was in the usual form and made out upon the usual printed blanks in use by said defendant at said station, and that said Easton was authorized by said defendant to execute bills of lading for cotton and other freight by him received for the purpose of transportation by the defendant.

"3d. That the said Joseph Lahnstein indorsed said bill of lading by writing his name across the back thereof and drew a draft on the plaintiffs in this cause on or about November 6th, 1883 (of which draft a copy is hereinafter given), for the sum of eight thousand dollars, payable at sight to the order of Oliver & Griggs, and attached said draft to said bill of lading so indorsed, and on or about November 6th, 1883, forwarded the same through said Oliver & Griggs for presentation to and payment by the plaintiffs in this cause; that in due course of business Oliver & Griggs forwarded said draft, with bill of lading attached, to New Orleans, where the same was presented to and paid by plaintiffs on or about November 10th, 1883.

"4th. That in paying said draft said plaintiffs acted in good faith and in the usual course of their business as commission merchants making advances upon shipments of cotton to them for sale, and without any knowledge of any fraud or misrepresentation connected with said bill of lading and draft, and with the full and honest belief that said bill of lading and draft were honestly and in good faith executed, and that the cotton mentioned in said bill of lading had been in fact received by said defendant as represented in said bill of lading.

"5th. That plaintiffs had previously paid one or more drafts upon similar bills of lading, signed by the said Easton as agent aforesaid, for cotton shipped them by said Joseph Lahnstein, for sale by plaintiffs as commission merchants for account of said Joseph Lahnstein, and that the cotton so previously advanced upon was received by plaintiffs in the due course of transportation, pursuant to the terms of the bills of lading upon which they made advances respectively, and the bill of lading of November 6th, 1883, was the first received by plaintiffs from said Lahnstein and not fulfilled by defendant.

"6th. That, in point of fact, said bill of lading of November 6th, 1883, was executed by said E. D. Easton fraudulently and by collusion with said Lahnstein and without receiving any cotton for transportation, such as is represented in said bill of lading, and without the expectation on the part of the said Easton of receiving any such cotton; that said Easton and said Lahnstein had fraudulently combined in one other case, whereby said Easton signed and delivered to the said Lahnstein a similar bill of lading for three hundred bales of cotton which had not been received, and which the said Easton had no expectation of receiving, the latter-named bill of lading having been given early in November, 1883, but that plaintiffs in this suit had no knowledge whatever of the facts stated in this (sixth) clause until after they had in good faith paid and advanced upon the bill of lading sued on and the draft thereto attached, to them presented as aforesaid, the sum of $8000.00, as hereinbefore stated.

"7th. That the cotton mentioned in said bill of lading, (of November 6th, 1883,) had the same been actually received by defendant and forwarded to plaintiffs, would have been worth largely more than the amount so advanced by said plaintiffs as aforesaid — that is to say, would have been worth about $10,000.00, and that, except that the cotton was not received nor expected to be received by said agent when said bill of lading was by him executed as aforesaid, the transaction was, from first to last, customary and in the usual course of trade, and in accordance with the usage and customs of merchants and shippers and receivers of cotton.

"8th. That on said November 6th, 1883, and long prior thereto and ever since, the headquarters and main offices of defendant were and have been connected by railroad and telegraph communication with all stations on defendant's railroad and with Sherman station aforesaid, among others.

"9th. That the defendant is a corporation created and existing and domiciled as alleged in the petition.

"10th. That on November 10th, 1883, said Joseph mentioned above was insolvent, and that he has been insolvent ever since and is so now."

Then follows bill of lading, indorsed by Lahnstein and with draft on Friedlander & Co. for $8000 attached, acknowledging the receipt from Joseph Lahnstein of "two hundred bales of cotton in apparent good order, marked and numbered as below, to be transported from Sherman to New Orleans, La., and delivered to the consignees or a connecting common carrier," and proceeding in the usual form, Lahnstein being named as consignee, and directions given, "Notify J. Friedlander & Co., New Orleans, La." The Circuit Court found for the defendant, and judgment was rendered accordingly, and writ of error thereupon brought to this court.

Upon the argument certain parts of the statutes of the State of Texas were cited, with especial reference to the provision as to common carriers, "that the trip or voyage shall be considered as having commenced from the time of the signing of bill of lading." Title 13, Carriers, c. 1, Art. 277; Art. 280; Art. 283, [Act February 4, 1860]; Title 84, Railroads, c. 10, Art. 4258 *b*, § 8, [Approved, April 10, 1883, General Laws, Texas, 1883, p. 69]. Sayles' Texas Civil Statutes, 1888, Vol. I, pp. 131, 134, 135; Vol. II, p. 450.

*Mr. A. G. Safford*, for plaintiffs in error, cited: *Martin v. Webb*, 110 U. S. 7; *Carr v. London and Northwestern Railway Co.*, L. R. 10 C. P. 307; *Bank of Batavia v. New York, Lake Erie &c. Railroad*, 106 N. Y. 195; *Cooper M'f'g Co. v. Ferguson*, 113 U. S. 727; *Bulger v. Roche*, 11 Pick. 36; *S. C.* 22 Am. Dec. 359; *United States v. State Bank*, 96 U. S. 30; *Pollard v. Vinton*, 105 U. S. 7; *Grant v. Norway*, 10 C. B. 665;

Citations for Defendant in Error.

*Armour* v. *Michigan Central Railroad*, 65 N. Y. 111; *Relyea* v. *New Haven Rolling Mill Co.*, 42 Connecticut, 579; *Brooke* v. *New York, Lake Erie &c. Railroad*, 108 Penn. St. 529; *Wichita Savings Bank* v. *Atchison, Topeka &c. Railroad*, 20 Kansas, 519; *Sioux City & Pacific Railroad* v. *Fremont Bank*, 10 Nebraska, 556; *St. Louis &c. Railroad* v. *Larned*, 103 Illinois, 293; *Wilkens* v. *Baltimore & Ohio Railroad*, 44 Maryland, 11; *Williams* v. *Wilmington & Weldon Railroad*, 93 North Carolina, 42; *Merchants' Bank* v. *State Bank*, 10 Wall. 604; *Drew* v. *Kimball*, 43 N. H. 282; *S. C.* 80 Am. Dec. 163; *Bank* v. *Lanier*, 11 Wall. 369, 377; *Bridgeport Bank* v. *New York & New Haven Railroad*, 30 Connecticut, 231; *New York & New Haven Railroad* v. *Schuyler*, 34 N. Y. 30; *Holbrook* v. *New Jersey Zinc Co.*, 57 N. Y. 616; *Sturges* v. *Bank of Circleville*, 11 Ohio St. 153; *S. C.* 78 Am. Dec. 296; *Cocheco National Bank* v. *Haskell*, 51 N. H. 116; *Rapp* v. *Latham*, 2 B. & Ald. 795; *Hume* v. *Bolland*, 2 Ryan & Moody, 371; *Beach* v. *State Bank*, 2 Indiana, 488; *Doremus* v. *McCormick*, 7 Gill, 49; *Sweet* v. *Bradley*, 24 Barb. 549; *Hawkins* v. *Appleby*, 2 Sandf. (N. Y.) 421; *Griswold* v. *Haven*, 25 N. Y. 595; *S. C.* 82 Am. Dec. 380; *French* v. *Rowe*, 15 Iowa, 563.

*Mr. Winslow F. Pierce* for defendant in error.

*Mr. J. F. Dillon* filed a brief for defendant in error, citing: *Lickbarrow* v. *Mason*, 2 T. R. 63; *Grant* v. *Norway*, 10 C. B. 665; *S. C.* 15 Jurist, 396; *S. C.* 2 Eng. L. & Eq. 337; *Hubbersty* v. *Ward*, 8 Exch. 330; *Brown* v. *Powell Duffryn Co.*, L. R. 10 C. P. 562; *The Freeman* v. *Buckingham*, 18 How. 182; *The Loon*, 7 Blatchford, 244; *Robinson* v. *Memphis & Charleston Railway*, 9 Fed. Rep. 129; *S. C.* 16 Fed. Rep. 57; *Pollard* v. *Vinton*, 105 U. S. 7; *Sears* v. *Wingate*, 3 Allen, 103; *Baltimore & Ohio Railroad* v. *Wilkens*, 44 Maryland, 11; *Hunt* v. *Mississippi Central Railroad*, 29 La. Ann. 446; *Louisiana Bank* v. *Laveille*, 52 Missouri, 380; *Williams* v. *Wilmington & Weldon Railroad*, 93 North Carolina, 42; *Chandler* v. *Sprague*, 5 Met. 306; *S. C.* 38 Am. Dec. 404, and note, page 407; *Cox* v. *Bruce*, 18 Q. B. D. 147; *St. Louis, Iron Mountain & Southern Railway Co.* v. *Knight*, 122 U. S. 79; *Walker* v

*Brewer*, 11 Mass. 99; *Miller* v. *Hannibal & St. Joseph Railroad*, 90 N. Y. 430.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

.The agreed statement of facts sets forth "that, in point of fact, said bill of lading of November 6, 1883, was executed by said E. D. Easton, fraudulently and by collusion with said Lahnstein and without receiving any cotton for transportation, such as is represented in said bill of lading, and without the expectation on the part of the said Easton of receiving any such cotton;" and it is further said that Easton and Lahnstein had fraudulently combined     another case, whereby Easton signed and delivered to Lahnstein a similar bill of lading for cotton "which had not been received, and which the said Easton had no expectation of receiving;" and also "that, except that the cotton was not received nor expected to be received by said agent when said bill of lading was by him executed as aforesaid, the transaction was, from first to last, customary." In view of this language, the words "for transportation, such as is represented in said bill of lading" cannot be held to operate as a limitation. The inference to be drawn from the statement is that no cotton whatever was delivered for transportation to the agent at Sherman station. The question arises, then, whether the agent of a railroad company at one of its stations can bind the company by the execution of a bill of lading for goods not actually placed in his possession, and its delivery to a person fraudulently pretending in collusion with such agent that he had shipped such goods, in favor of a party without notice, with whom, in furtherance of the fraud, the pretended shipper negotiates a draft, with the false bill of lading attached. Bills of exchange and promissory notes are representatives of money, circulating in the commercial world as such, and it is essential, to enable them to perform their peculiar functions, that he who purchases them should not be bound to look beyond the instrument, and that his right to enforce them should not be defeated by any-

thing short of bad faith on his part. But bills of lading answer a different purpose and perform different functions. They are regarded as so much cotton, grain, iron or other articles of merchandise, in that they are symbols of ownership of the goods they cover. And as no sale of goods lost or stolen, though to a *bonâ fide* purchaser for value, can divest the ownership of the person who lost them. or from whom they were stolen, so the sale of the symbol or mere representative of the goods can have no such effect, although it sometimes happens that the true owner, by negligence, has so put it into the power of another to occupy his position ostensibly, as to estop him from asserting his right as against a purchaser, who has been misled to his hurt by reason of such negligence. *Shaw* v. *Railroad Co.*, 101 U. S. 557, 563 ; *Pollard* v. *Vinton*, 105 U. S. 7, 8 ; *Gurney* v. *Behrend*, 3 El. & Bl. 622, 633, 634. It is true that while not negotiable as commercial paper is, bills of lading are commonly used as security for loans and advances; but it is only as evidence of ownership, special or general, of the property mentioned in them, and of the right to receive such property at the place of delivery.

Such being the character of a bill of lading, can a recovery be had against a common carrier for goods never actually in its possession for transportation, because one of its agents, having authority to sign bills of lading, by collusion with another person issues the document in the absence of any goods at all?

It has been frequently held by this court that the master of a vessel has no authority to sign a bill of lading for goods not actually put on board the vessel, and, if he does so, his act does not bind the owner of the ship even in favor of an innocent purchaser. *The Freeman* v. *Buckingham*, 18 How. 182, 191 ; *The Lady Franklin*, 8 Wall. 325 ; *Pollard* v. *Vinton*, 105 U. S. 7. And this agrees with the rule laid down by the English courts. *Lickbarrow* v. *Mason*, 2 T. R. 77 ; *Grant* v. *Norway*, 10 C. B. 665 ; *Cox* v. *Bruce*, 18 Q. B. D. 147. "The receipt of the goods," said Mr. Justice Miller, in *Pollard* v. *Vinton*, *supra*, "lies at the foundation of the contract to carry and deliver. If no goods are actually received, there can be no

valid contract to carry or to deliver." " And the doctrine is applicable to transportation contracts made in that form by railway companies and other carriers by land, as well as carriers by sea," as was said by Mr. Justice Matthews in *Iron Mountain Railway* v. *Knight*, 122 U. S. 79, 87, he adding also: " If Potter (the agent) had never delivered to the plaintiff in error any cotton at all to make good the 525 bales called for by the bills of lading, it is clear that the plaintiff in error would not be liable for the deficiency. This is well established by the cases of *The Schooner Freeman* v. *Buckingham*, 18 How. 182, and *Pollard* v. *Vinton*, 105 U. S. 7."

It is a familiar principle of law that where one of two innocent parties must suffer by the fraud of another, the loss should fall upon him who enabled such third person to commit the fraud ; but nothing that the railroad company did or omitted to do can be properly said to have enabled Lahnstein to impose upon Friedlander & Co. The company not only did not authorize Easton to sign fictitious bills of lading, but it did not assume authority itself to issue such documents except upon the delivery of the merchandise. Easton was not the company's agent in the transaction, for there was nothing upon which the agency could act. Railroad companies are not dealers in bills of exchange, nor in bills of lading; they are carriers only, and held to rigid responsibility as such. Easton, disregarding the object for which he was employed, and not intending by his act to execute it, but wholly for a purpose of his own and of Lahnstein, became *particeps criminis* with the latter in the commission of the fraud upon Friedlander & Co., and it would be going too far to hold the company, under such circumstances, estopped from denying that it had clothed this agent with apparent authority to do an act so utterly outside the scope of his employment and of its own business. The defendant cannot be held on contract as a common carrier, in the absence of goods, shipment and shipper ; nor is the action maintainable on the ground of tort. " The general rule," said Willes, J., in *Barwick* v. *English Joint Stock Bank*, L. R. 2 Ex. 259, 265, " is that the master is answerable for every such wrong of the servant or agent as is committed in the course

of the service and for the master's benefit, though no express command or privity of the master be proved." See also *Limpus* v. *London General Omnibus Co.*, 1 H. & C. 526. The fraud was in respect to a matter within the scope of Easton's employment or outside of it. It was not within it, for bills of lading could only be issued for merchandise delivered; and being without it, the company, which derived and could derive no benefit from the unauthorized and fraudulent act, cannot be made responsible. *British Mutual Banking Co.* v. *Charnwood Forest Railway Co.*, 18 Q. B. D. 714.

The law can punish roguery, but cannot always protect a purchaser from loss, and so fraud perpetrated through the device of a false bill of lading may work injury to an innocent party, which cannot be redressed by a change of victim.

Under the Texas statutes the trip or voyage commences from the time of the signing of the bill of lading issued upon the delivery of the goods, and thereunder the carrier cannot avoid his liability as such, even though the goods are not actually on their passage at the time of a loss, but these provisions do not affect the result here.

We cannot distinguish the case in hand from those heretofore decided by this court, and in consonance with the conclusions therein announced this judgment must be

*Affirmed.*