# BALTIMORE CITY COURT

Filed May 28, 1892.

## LAZARD FRERES
### VS.
## MERCHANTS & MINERS TRANS. CO.

*Schmucker & Whitelock* for plaintiff.

*Wm. Pinkney Whyte* and *Bernard Carter* for defendant.

HARLAN, C.J.—

This is an action of assumpsit against the defendant as a common carrier for the failure to perform the contract of carriage contained in three bills of lading, which were issued, as alleged, by the defendant's agent in Savannah, Georgia, to Charles Green's Son & Co., on June 19 and 20, 1891, and of which the plaintiffs became bona fide holders for value by endorsement and delivery on June 22, 1891. Each of the bills of lading provides for the transportation of certain bales of cotton, 550 in all, valued at $23,500, one of the bills being set out *in extenso* in the seventh count of the plaintiff's declaration, and the others alleged to be in the same form and words, except as to the description of the goods to be carried. The breach set up is the failure of the defendant to transport the cotton to the City of Baltimore and there deliver the same to the steamers of the Norddeutscher Lloyd for transportation to Bremen.

The third plea of the defendant alleges that the bills of lading referred to in the 7th and 8th counts of the declaration were issued to said Charles Green's Son & Co., without authority of the defendant and in fraud of the defendant by a fraudulent combination between W. E. Guerard and the said Charles Green's Son & Co., although the cotton in said bills of lading described was not actually put on board of the said steamer D. H. Miller or upon any other steamer of the defendant company or delivered into the custody of the defendant."

To this plea the plaintiffs, relying upon the Maryland Statute, Code of Public General Laws, Article 14, Sections 1 and 2, have demurred.

Section 1 of said Article provides (omitting immaterial language) that "All bills of lading for goods, &c., be transported on land or water over both which shall be executed in this State, or being executed elsewhere, shall provide for the delivery of goods within this State, shall be and they are hereby declared negotiable instruments, unless provided in express terms to the contrary on the face thereof in the same sense as bills of exchange and promissory notes, and full and complete title to the property in said instruments mentioned shall be vested in every bona fide holder thereof for value altogether unaffected by any rights or equities whatsoever between the original or any prior holder of which such bona fide holder for value shall not have had actual notice."

And Section 2 declares that, "Every instrument of those mentioned and described in Section 1, which shall be issued by any person or corporation or by any agent or officer of any person or corporation authorized to issue the same on his or its behalf, or authorized or permitted to issue like instruments on his or its behalf for goods actually received for transportation or held on storage, shall be conclusive evidence in the hands of any bona fide holder for value of such instrument, who shall become such without actual notice to the contrary, that all of the goods in said instrument mentioned had been actually received by such person or corporation, notwithstanding that the fact may be otherwise, and that such agent or officer had no authority to issue such instrument except for goods actually received."

Only two kinds of bills of lading are within the terms of these sections; first, those executed in this State, and second, those executed elsewhere which provide for the delivery of goods within this State. And the first question which the court is called upon to determine is whether the bills of lading here declared on, not having been executed in this State, are bills of lading, which provide for the delivery of goods within this State within the meaning of the Maryland Statute. This question must be decided in the affirmative before the plaintiff's demurrer can be sustained, because the rule of law, apart from the statute, is well settled in our courts that the agent of the carrier has no authority to sign a bill of lading for goods not actually received; and the carrier is not responsible to persons taking or dealing with or making advances on the faith of such an instrument which is untruthful in this particular. B. & O. R. R. vs. Wilkins, 44 Md. 11. Freedland vs. Texas R. R. Co., 130 U. S. 416.

In determining this question it becomes important to examine more particularly the bill of lading set out in the declaration. To this instrument there are three parties—the Merchants and Miners' Transportation Company (the defendant), a carrier operating a line of steamers from Savannah to Baltimore; the Norddeutscher Lloyd, a connecting carrier operating a line of steamers from Baltimore to Bremen, and Charles Green's Sons & Co., (the shippers).

The bill of lading acknowledges the receipt of the cotton to "be transported by steamship D. H. Miller, or by any succeeding steamer, &c., to Baltimore, and there (being lightered, ferried, scowed or carted at risk of consignees) to be delivered to the steamer or steamers of the Norddeutscher Lloyd for transportation, subject to transshipment at Bremenhaven and intermediate points (being lightered, ferried, scowed or carried or transferred by railway at risk of consignees) to the port of Bremen, and there to be delivered unto order or to assigns, he or they paying freight, &c." It also stipulates "that a delivery in good order of the cotton to the steamer or steamers of the Norddeutscher Lloyd at Baltimore shall absolve the steamship D. H. Miller from all liability in respect thereof, and that the liability of the Norddeutscher Lloyd shall begin only on the actual delivery of the goods to their steamer at Baltimore"; and the bill is signed W. E. Guerard, agent severally but not jointly.

The contract entered into between the shippers and the two transportation companies by this instrument was a contract to carry the cotton from Savannah via Baltimore and Bremenhaven to Bremen and there deliver it

to the shippers' order upon payment of freight of the whole transportation; the carriage beginning on receipt of the goods at Savannah and ending on the delivery of the cotton to the shippers' order at Bremen. Only that part of the carriage lying between Savannah and Baltimore was to be borne by the defendant and its liability with respect to the cotton ended on its delivery in good order to the Norddeutscher Lloyd's steamer in Baltimore, but the final destination of the cotton was, manifestly, Bremen, with the contemplation and agreement of all of the parties, because no freight was to be paid until it was there delivered.

The plaintiffs rely upon the stipulation in the bill of lading for delivery to the Norddeutscher Lloyd in Baltimore as bringing the case within the Maryland Statute. They say that the term delivery is used without qualification in the Maryland Statute and that delivery to another carrier for transportation and delivery out of this State is still a delivery in this State, and that the delivery in Baltimore provided by this bill of lading is unquestionably within the Statute because it is a delivery which as fully terminates the liability of the defendant as if made to the shipper himself.

The defendant on the other hand contends, that the delivery intended to be referred to in the Maryland Statute is the delivery to the shipper or other consignees required by the law of carriage to be made to the shipper or other consignee at the terminus of the carriage and that the bill of lading in this case is not within the Statute, because instead of contemplating or providing for the delivery of the cotton to the shipper or other consignee, in Baltimore, it expressly provides that it shall be delivered to the order of shipper at Bremen, and therefore, expressly declares, that it shall not be delivered to said shipper or any other consignee, at Baltimore; upon the contrary that it shall be carried through and beyond Baltimore over the High Seas to the continent of Europe; and in legal effect all that the bill of lading

provides to be done in Baltimore is that the cotton shall be transferred from one steamer to another, the shipper having no right to touch it or having anything to do with this transfer * * * * * he having the right to call for delivery only in Bremen.

I am of the opinion that the defendant's contention in this regard is the one which should receive the sanction of the court. The statute was as its preamble set forth, "to promote the security of commercial transactions by regulating the issue, negotiability and transfer of bills of lading, storage receipts and like commercial instruments by defining the rights of the holders thereof." But it was not intended to apply to all bills of lading, nor did the legislature assume or undertake to give negotiability to all such instruments. On the contrary, it was expressly limited to two classes of bills of lading, and is not to be extended by implication to any such instruments as are not fairly within those classes, however desirable we may think it to be, from the standpoint of commercial convenience, that the statute should have a wider application.

The second of these classes includes only such bills of lading "executed elsewhere, as provide for the delivery of goods in this State," and it seems to me in a statute intended "to define the rights of holders of such instruments" against the carrier, that "the delivery" here referred to is plainly the delivery by the carrier to some person as holder of the bill, and which said holder of the bill would have the right to demand, should be made to him within this State, in other words delivery to consignee, whether the consignee be the shipper or his assigns. Only such bills of lading would ordinarily appear in our markets or affect the citizens of our State, for whom our laws are primarily made. I am unable to conclude that the General Assembly had in contemplation and meant to engraft the character of negotiability upon bills of lading providing for the transportation of goods from a point of shipment out of the State to a place of

destination also out of the State by reason of the fact that the goods in course of transit were to be delivered from one carrier to another within the State.

If the statute does not mean bills of lading which provide for delivery to the shipper or consignee within the State, then it would apply in every case where a bill of lading stipulates for "tradition" from one person to another, or from one instrument of carriage to another, within the State.

If, for example, the Merchants and Miners' Transportation Company and the Norddeutscher Lloyd had agreed to be jointly responsible for the goods on the whole route, instead each for its own portion of the route, but the contract had provided that the steamers of one should deliver to the steamers of the other in Baltimore, the statute would apply, because it is delivery, "tradition," within the State and not termination of liability that gives character to the instrument. So too if a carrier operating a railroad from Savannah to Baltimore and a line of steamers from Baltimore to Philadelphia were to receive goods for shipment to the latter city under a bill of lading which stipulated that the goods should be transported by rail to Baltimore and there delivered to the steamers of the same line to be transported by water to Philadelphia, this would also be within the statute. We must either give to the word delivery, as used in the statute the broad signification indicated, and apply the statute to all such cases, or we must say that the legislature use the word with reference to the ordinary delivery which it is the very aim and object of all bills of lading to accomplish, to wit: The delivery by the carrier at the termination of the carriage to the shipper or other consignee, a delivery, which, instead of being a delivery "for transportation," is the delivery which ends the transportation, restores the goods to the possession of the shipper or his assigns and destroys the lien of freight. The latter, in my judgment, is its true interpretation.

Being of opinion that the bills of lading declared on in this case are not within the operation of the Marlyand statute, the demurrer will have to be overruled, and it is so ordered.