## GUARANTY TRUST CO. OF NEW YORK *v.* MOBILE & OHIO RAILROAD CO.

[70 South. 585.]

1. FRAUD. *Sale of false bill of lading. Liability to purchaser. Carriers. · Ratification.*

Where plaintiff in New York purchased false bills of lading with foreign exchange attached for two shipments of export cotton of one hundred bales each, bearing certain marks, purporting to have been issued by the defendant railroad, and thereafter the alleged shipper procured the defendant railroad, which acted in good faith, to issue true bills of lading to its agent and to sign a telegram to its broker in New York, stating that it had received two export shipments of cotton of the same marks, which shipments under true bills of lading were stopped by the holder thereof, and the foreign exchange draft was never honored, and plaintiff lost the money advanced on the false bills of lading. In such case since there was no misrepresentations in the telegram, which stated the truth, plaintiff could not recover of defendant on the ground that the telegram had misled it and caused the loss.

2. SAME.

In such case since the railroad company was obliged to deliver the cotton to the holder in good faith on the true bill of lading or stop the shipment on the order of the true holder of the good bill of lading, there could not be any ratification of the forged bills of lading.

3. CARRIERS. *False bills of lading. Telegram. Liability. Estoppel.*
   Under the facts in this case the sending of the telegram at the
   request of the shipper's agent for his accommodation by defend-
   ant's agent who was familiar with the methods by which ex-
   port shipments of cotton were handled, and who knew or
   should have known, that the telegram was intended for the
   use of the purchaser of the exchange in selling it, or in disposing
   of the ladings, did not estop the defendant from disputing the
   fact that the bills of lading purchased by plaintiff were false,
   since the statement in the telegram was true, and its agent might
   presume good faith on the part of its shippers, and that no
   false and forged bills of lading would be offered for sale by the
   shipper.

APPEAL from the circuit court of Lowndes county.
HON. THOS. B. CARROLL, Judge.

Suit by the Guaranty Trust Company of New York
against the Mobile and Ohio Railroad Company. From a
judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*W. J. Lamb* and *Wm. Baldwin,* for appellant.

*S. R. Price* and *J. M. Boone,* for appellee.

STEVENS, J., delivered the opinion of the court.

On, and for a long time prior to, April 20, 1910, the firm
of Steel, Miller & Co. was engaged in the cotton business,
with their principal office at Corinth, Miss. It appears
that one A. L. Jones was their agent at Columbus, Miss.,
and in the course of their business they would buy and
ship cotton to the compress at Columbus, and that the
Columbus Insurance & Banking Company would furnish
the money to pay for the cotton and take over as its se-
curity the compress receipts and bills of lading. The firm
had a broker in the city of New York, one F. Van Gerpen,
to whom they would send bills of lading covering export
shipments, insurance certificates, and foreign exchange.
This broker would sell sixty-day drafts upon foreign pur-

chasers of cotton, to banking establishments in New York City, assigning to the bank bills of lading, invoices, insurance, etc. The record of this case discloses that Steel, Miller & Co., on or about April 20, 1910, forwarded to its broker in New York foreign exchange, insurance certificate, and two documents purporting to be bills of lading covering, respectfully, one hundred bales marked RGCY, and one hundred bales marked RAEN consigned to Steel, Miller & Co., Bremen, Germany, via New Orleans, La. These ladings purported to have been issued by the Mobile & Ohio Railroad Company at Columbus, Mississippi, but in truth and in fact they were false and forged. Van Gerpen offered to the Guaranty Trust Company, appellant herein, these forged bills of lading and foreign exchange attached. It so happened at the time that the firm of Knight, Yancey & Co., a cotton firm of Decatur, Alabama, had failed some days prior, and on account of this big failure the exchange purchaser of appellant would not buy the paper offered by Van Gerpen until appellant should receive evidence satisfactory to it that the cotton had in fact been delivered to the railroad company for shipment. When appellant declined to buy the exchange Van Gerpen thereupon telegraphed Steel, Miller & Co. to have the railroad wire him they had received the cotton for shipment. On April 22, 1910, Mr. Jones, the agent at Columbus, acting under instructions from Steel, Miller & Co., secured compress clearances for two hundred bales of cotton for shipment, and in accordance with the usual custom himself prepared bills of lading in his office and carried them to the railroad office for issuance and execution. Mr. Jones accordingly arranged with the railroad agent for the shipment of one hundred bales of cotton marked RGCY and one hundred bales marked RAEN, consigned, routed, and marked exactly like the cotton appeared to have been shipped and marked by the forged ladings then in New York City. At the same time Mr. Jones had the agent of the rail-

road company at Columbus to sign a telegram to Van Ger-
pen, reading as follows:

"Columbus, Miss., April 22, 1910. F. Van Gerpen, 15
Williams St., New York. We have received for ship-
ment to Bremen from Steel, Miller & Company one hun-
dred marked RGCY and one hundred RAEN, routed
via New Orleans. [Signed] W. E. Kennedy, Agent, M.
& O. R. R. Co."

This telegram was written out by Mr. Jones, and was
delivered to the telegraph company and the fee for its
transmission paid by Jones. At this time neither the
agent of the railroad company nor Mr. Jones, as agent
of Steel, Miller & Co. knew anything of any forged lad-
ings having been sent by Steel, Miller & Co. to Van Gerpen
or of any forged ladings being in New York, and no one
connected with the railroad company at Columbus had
any intimation whatever that forged ladings were out,
or that any one connected with Steel, Miller & Co. in-
tended to use the telegram in negotiating any false bills of
lading. The true bills of lading made out by Mr. Jones in
his cotton office at Columbus were dated April 19th,
but were not executed by the railroad until April 22d,
three days later, and complaint is made by appellant of
the action of the railrod company in antedating the true
ladings. When Van Gerpen received the telegram above
set out, he attached it to the same papers he had before
that time offered to the purchasing agent of appellant,
and on the representation of facts stated in the telegram
suceeded in selling to appellant the foreign exchange,
and received from appellant fifteen thousand, two hun-
dred and forty dollars and eighteen cents. After Mr.
Jones received the true ladings he turned them over to
the Columbus Insurance & Banking Company which, as
a holder of the true ladings, stopped the shipment of the
two hundred bales of cotton covered by the true ladings
and sold the cotton on the market to a third party. The
cotton had not been fully loaded on the cars when the ship-
ment was ordered stopped, and of course the cotton never

left the station in Columbus before it was disposed of by the Columbus Insurance & Banking Company. According to the testimony of Van Gerpen, the foreign exchange and forged bills of lading were sold to appellant on the 25th; and according to the testimony of Kennedy, the agent of the railroad company, instructions to hold the shipment were not given him until about three-thirty o'clock p. m. of the 25th, and then Mr. Kennedy was advised that it would be the following day before these instructions could be made definite. The record further shows that on the 26th Mr. Kennedy wired Van Gerpen that the shipment had been stopped and the true ladings recalled or surrendered. This brought to light the fact that forged ladings had been transferred, but the loss had then already occurred. The foreign exchange draft which Van Gerpen sold to appellant was never honored, and consequently appellant received nothing of value, but, on the contrary, lost the money advanced on the forged ladings. It thereupon filed its declaration in the circuit court of Lowndes county, claiming from the appellee herein the money lost by it as aforesaid. The declaration is in two counts, the first of which complains of the nondelivery of the cotton covered by the apparently valid bills of lading purchased and held by appellant, while the second count seeks to recover the fifteen thousand dollars out of which appellant was defrauded, basing the right of recovery on the allegation that appellant was misled by the telegram sent by the agent of appellee to Van Gerpen. Proper issue was joined on both counts, evidence was heard by the court, the facts as above stated were developed, and a peremptory instruction was given in favor of appellee as defendant in the court below.

It is the contention of appellant that the railroad company caused the loss complained of; that the railroad company knew, or ought to have known, that the telegram was sent for the purpose of negotiating invoices and bills of lading for cotton, and that it was wrong for

the railroad company to send this telegram. It is the further contention of appellant that after having sent the telegram it was the duty of the railroad company to hold the cotton for shipment until Van Gerpen, the party to whom the telegram was addressed, could take legal steps to protect his interests or the intersts of any one relying upon the information contained in the telegram. It is the further contention of appellant that the telegram gave validity to and ratified the forged ladings then in New York.

The main point stressed in the oral argument of counsel for appellant is the contention that appellee, on the facts of this case, misled appellant and caused the loss. No action was taken by appellant against the Columbus Insurance & Banking Company or its assignee. On the contrary, it is claimed that appellant has no recourse against any one except appellee; Steel, Miller & Co. being insolvent and its estate having been administered in bankruptcy. What is it, therefore, that appellee has wrongfully done or failed to do? The request for the telegram came from the agent of Steel, Miller & Co. and not from appellant. The telegram was addressed to the broker of the shipper and not to appellant. This telegram, furthermore, stated the truth. There is no misrepresentation in it of an existing fact. The business of appellant, is, of course, to receive and transmit shipments of freight. Its duty in that regard was not violated. It, as common carrier, evidenced its contract with the shipper by and with the true bills of lading. The shipment of the two hundred bales of cotton in question was, and must necessarily be, controlled by the true ladings and the rights of the true holder of these ladings must be recognized and respected. The railroad company was obliged to deliver the cotton to the holder in good faith of the true ladings. There could not therefore be in this case any ratification of forged ladings. If the railroad company was justified in stopping the shipment on the order of the true holder of the good ladings,

how have the rights of appellant been by appellee invaded?

The question then presents itself whether appellee is in fault in sending the telegram. It must be conceded that there was nothing unlawful in the bare fact of sending this message. It was sent at the request of the shipper and for his accommodation. It stated the absolute truth. This is not a case, therefore, where the party representing a fact is afterwards estopped from denying the fact to the hurt or injury of another. But it is contended that the agent of appellee was familiar with the way foreign shipments of cotton were handled, and that he ought to have known this telegram was intended for the use of appellant in selling its paper or in disposing of its ladings. The law would accord the right, however, even to a railroad company to indulge the presumption of good faith on the part of its customers, and not require it to presume a felony had been, or would be, committed. The agent of appellee might well have thought the telegram would be of some service to Steel, Miller & Co. or to its broker in handling or disposing of the shipment of cotton actually receipted for. But just why the agent should have presumed false and forged ladings would be offered to the banking establishments of New York City it is difficult to conceive. The agent might well presume that the true ladings would be sold, and the telegram in question neither added to nor took away anything from the true ladings or the exact contract evidenced thereby. There is not the slightest proof of bad faith on the part of any of the agents or employees of appellee. Mr. Jones himself was ignorant of the false ladings. There is therefore no element of estoppel in this case.

It will be noted that this is not a contest between Steel, Miller & Co., or its trustee in bankruptcy, and the holder of the forged ladings. The rights of third parties have intervened, and their superior rights are conceded by appellant.

As a matter of fact, the loss in this case was occasioned by the false and forged ladings. With the purchase by appellant of these forged documents appellee had nothing to do. While the case of *Friedlander* v. *Railroad Co.*, 130 U. S. 416, 9 Sup. Ct. 570, 32 L. Ed. 991, may not be directly in point, the court in that case uses language applicable to the case at bar:

".   .   . The law can punish roguery, but cannot always protect a purchaser from loss, and so fraud perpetrated through the device of a false bill of lading may work injury to an innocent party, which cannot be redressed by a change of victim."

The peremptory charge given appellee in the court below was proper, and the case is accordingly affirmed.

*Affirmed.*