## SEABOARD AIR LINE RY. CO. v. GLEASON. *

Circuit Court of Appeals, Fifth Circuit.
October 28, 1927.

### No. 5103.

1. **Principal and agent** ⬤160½—**Employer is not liable for employee's fraudulent acts to effectuate independent purpose of his own.**

An employer is not liable for employee's acts done to effectuate an independent fraudulent purpose of his own, in utter disregard of the object for which he was employed, and not for purpose of furthering his employer's business.

2. **Carriers** ⬤47(1)—**Railroad held not liable for swindle perpetrated by employee by forged bill of lading with bill of lading attached, purporting to represent shipment from another city (49 USCA § 102).**

Where railroad employee forged a bill of lading purporting to represent shipment of cotton from another city to a fictitious person, notify plaintiff, with draft attached, and on inquiry by plaintiff at railroad office, after notice of arrival, said employee falsely informed plaintiff that cotton had arrived, and thereby induced plaintiff to pay draft, with proceeds of which employee absconded, *held* that, notwithstanding Act Aug. 29, 1916, § 22 (49 USCA § 102 [Comp. St. § 8604kk]), and that it was part of employee's duties to give notice of arrivals, railroad was not liable, in absence of evidence that employee had actual or apparent authority to issue bills of lading in city where bill of lading purported to have been issued.

In Error to the District Court of the United States for the Southern District of Georgia; Wm. H. Barrett, Judge.

Action by John W. Gleason, doing business as the John W. Gleason Cotton Company, against the Seaboard Air Line Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

E. Ormonde Hunter and J. Randolph Anderson, both of Savannah, Ga. (Anderson, Cann & Cann, J. Randolph Anderson, Connerat & Hunter, and E. Ormonde Hunter, all of Savannah, Ga., on the brief), for plaintiff in error.

Edward Brennan, of Savannah, Ga., for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action by the defendant in error, herein called the cotton company, against the plaintiff in error, Seaboard Air Line Railway Company, herein called the railway company, and resulted in a judgment for the former, based on a verdict in its favor on the second and third counts of its petition. The evidence disclosed the following facts:

*Rehearing denied December 5, 1927.

One McDonnell, an employee of the railway company in its office at Savannah, Ga., conceived a plan of swindling the cotton company to his own enrichment by a forged bill of lading transaction. He procured a leave of absence from his employer for the 18th of March for the alleged purpose of taking a certified public accountant's examination in Atlanta. On March 18th McDonnell went to Charleston, S. C., where he presented himself under the name of J. A. Tillman at the Bank of Charleston and drew on the cotton company in the name of said Tillman for $10,000, with a bill of lading attached purporting to cover 110 bales of cotton marked J. A. T., received March 18, 1925, at Charleston, to be transported by the railway company to Savannah, order said Tillman, notify the cotton company. The bill of lading thus uttered by McDonnell, the indorsement on same, and the draft drawn by him in the name of said Tillman were all forged by the said McDonnell. The name of J. A. Tillman, used by him, was a fictitious name. As a matter of fact there was no such shipment originating at Charleston. No such 110 bales, or any part of same, ever existed or was ever delivered to the railway company by said Tillman or said McDonnell, or by any one, for transportation to Savannah to the order of said Tillman or to notify the cotton company.

McDonnell then returned to Savannah and was back at his desk on the 19th. The forged draft and bill of lading were forwarded for collection from Charleston through the Citizens' & Southern Bank of Savannah, with a letter to the effect that the said Tillman came to the Bank of Charleston unidentified. This letter, with the draft and bill of lading attached, the Citizens' & Southern Bank presented to the cotton company. In furtherance of his fraudulent scheme, upon being telephoned by the cotton company at his employer's office, McDonnell then stated to it that the cars designated in the forged bills of lading had arrived at the terminals in Savannah, although he knew this to be false. Thereupon the cotton company paid the draft. McDonnell's duties as an employee of the railway company in its Savannah office included giving notice to the trade of the arrival of cotton.

After the draft was paid in Savannah, and the funds transmitted to the Bank of Charleston in Charleston by mail, arriving at the opening of business on the morning of March 20, 1925, said McDonnell, after having procured another leave of absence from the business of the railway company, alleged-

ly in connection with his public accountant's examination, presented himself at the said Bank of Charleston during the morning of that day, still masquerading under the name of Tillman, and collected the $10,000, with which he decamped. The officials of the Bank of Charleston who handled this transaction had received no information of any kind relative to the bill of lading from the railway company, its agents or employees in Charleston or elsewhere, but relied solely upon the representations of McDonnell, masquerading as Tillman, in receiving the same, forwarding it for collection, and paying out the proceeds. Said McDonnell then had no connection of any kind with the railway company at Charleston. He had no authority to issue bills of lading at Charleston. The forged bill of lading was not issued by McDonnell in or about the offices of the Seaboard Air Line Railway Company in Charleston. The records of the offices of the railway company in and about Charleston contain no record of any kind of this purported shipment. The Charleston waybill references given by McDonnell were fictitious; the actual waybills bearing those names as of record in the Charleston office of the railway company covered entirely different shipments, none of which were shipped by Tillman or McDonnell, none of which were to the cotton company, or notify the cotton company, and none of which covered cotton.

The second count was predicated on the above-mentioned false and fraudulent statement, made over the telephone by McDonnell to the cotton company, to the effect that the cars designated in the forged bill of lading had arrived at the terminals in Savannah. The third count was predicated on allegations to the effect that prior to March 19, 1925, the railway company knew that said McDonnell was corrupt and dishonest, and had stolen numerous bales of cotton from the railway company, and had forged bills of lading, and that the railway company was negligent in continuing said McDonnell in its employment, notwithstanding such knowledge.

The railway company duly excepted to the following, among other rulings of the court: The overruling of separate motions that verdict in favor of the railway company on the second and third counts be directed, and the following part of the court's charge to the jury: "In the one part of the case before you, that is, count 2, it will be necessary to prove—in fact, some of it is not disputed, the different cotton transactions in Savannah—it will be necessary to prove that

McDonnell was the agent, and that this statement of him, which is not denied, that the 110 bales of cotton were actually on hand at the Savannah terminals in Savannah, and that he made that statement, and that was within the scope of his authority, and that the $10,000 was paid only after the assurance that the cotton had arrived and was there under this bill of lading, and that after such assurance was given the $10,000 was actually paid. If you find that is true, it will be your duty to find a verdict for the plaintiff."

In overruling a motion for a new trial the trial judge stated: "It is the opinion of the court that the evidence is not sufficient to warrant the verdict upon the third count, and, had the verdict been upon that count alone, a new trial would have been granted."

[1] The undisputed evidence was to the effect that the acts of McDonnell with reference to the forged bill of lading were done to effectuate an independent fraudulent purpose of his own, in utter disregard of the object for which he was employed, not for the purpose of furthering his employer's business, and that in doing those acts he was acting for himself alone, and not in behalf of his employer or the latter's business. Under the general rule prevailing in the federal courts, an employer is not liable for such conduct of his employee. Friedlander v. Texas, etc., Railway Co., 130 U. S. 416, 9 S. Ct. 570, 32 L. Ed. 991; Harris, Irby & Vose v. Allied Compress Co. (C. C. A.) 6 F.(2d) 7; 39 Corpus Juris, 1925 et seq.

[2] The facts of the case do not bring it within the exception to the above-mentioned rule created by Act Aug. 29, 1916, § 22. (39 Stat. 542; 49 USCA § 102; Comp. Stat. § 8604kk), making a carrier liable to a holder for value of an order bill of lading issued by or on behalf of the carrier by an agent or employee, whose actual or apparent authority includes the receiving of goods and issuing bills of lading therefor for transportation in commerce among the states and with foreign nations. No evidence indicated that McDonnell had either actual or apparent authority to issue bills of lading for the railway company at Charleston, where the forged bill of lading purported to have been issued. In enacting the statute mentioned, Congress impliedly approved the above-mentioned rule, which had been stated in the opinion in the case of Friedlander v. Texas, etc., Railway Co., supra, by legislating on the subject and creating an exception to that rule, instead of abolishing it. We think that no evidence adduced sustained the allegations of the third count.

Above-mentioned rulings of the court are not consistent with conclusions we have expressed. Because of the errors in those rulings, the judgment is reversed, and the cause is remanded for a new trial.

Reversed.