## CHICAGO & N. W. RY. CO. v. STEPHENS NAT. BANK OF FREMONT.*
### No. 9967.

Circuit Court of Appeals, Eighth Circuit.

Jan. 25, 1935.

Rehearing Denied Feb. 20, 1935.

Wymer Dressler, of Omaha, Neb. (Robert D. Neely, of Omaha, Neb., and Samuel H. Cady and William T. Faricy, both of Chicago, Ill., on the brief), for appellant.

William J. Courtright, of Fremont, Neb. (Seymour S. Sidner, of Fremont, Neb., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

The appellant (hereinafter called the carrier) and the appellee (hereinafter called the bank) are, respectively, a common carrier in interstate commerce and a national bank. Both did business at Fremont, Neb. The Norris-Lyddon Produce Company (which will be referred to as the shipper) had been from April, 1921, to about October 15, 1932, carrying on a butter and egg business at that place. The shipper had a private warehouse on a side track connected with the carrier's line of railroad, and had shipped many carloads of produce in interstate commerce over that railroad each year. In 1932 the carrier had received from the shipper about 280 cars of produce, of which 200 were loaded with eggs. The carrier furnished cars on the order of the shipper, and spotted them for loading on the side track at its warehouse; the shipper did the loading, sealed the cars with seals furnished by the carrier, made out the bills of lading on forms also furnished by the carrier, and presented them to the carrier's agent for signature. When cars were being loaded or were to be loaded by the shipper, it was customary for it to present order bills of lading to the agent of the carrier before the close of banking hours, and, after obtaining his signature to such bills of lading, to negotiate them with the plaintiff bank, with which the shipper did business for about eleven years. It frequently happened that the cars furnished by the carrier had not been loaded by the shipper when the bills were presented to and signed by the agent of the carrier, as it was customary for the shipper to bill out its anticipated receipts of the day and the carrier was notified by the shipper if the cars billed would not be ready the day the bill was issued. The bills of lading would bear the notation, "shipper's load and count," since the carrier did nothing more than spot the cars for loading and transport them after they had been sealed and were ready for transportation.

The shipper ordered a car for October 11, 1932. It was iced by the carrier and spotted for loading at the shipper's warehouse about 1 o'clock in the afternoon of that day. About 2 o'clock of the same day, the shipper presented to the carrier's agent an "or-

*Writ of certiorari denied 55 S. Ct. 650, 79 L. Ed. ——.

der notify" bill of lading covering 400 cases of eggs to be transported to New York. The bill was signed by the carrier's agent, indorsed by the shipper, and negotiated at the plaintiff bank for $2,600. On October 13, 1932, upon the order of the shipper, another car was iced by the carrier and spotted for loading, and, before the close of banking hours on that day, the shipper presented a similar bill of lading for 400 cases of eggs, which was signed by the carrier's agent and also negotiated at the bank for $2,600. The shipper had actually contracted for the eggs to be loaded into these cars, but when the eggs arrived at its warehouse it was unable to pay for them. The cars were never loaded nor sealed. The shipper never paid the freight. The carrier never transported the cars, nor was it ever ordered by the shipper to transport them. The bills of lading were in the usual form indicating the receipt of goods for transportation. They bore the notation "shipper's load and count." They also contained the numbers of the cars, the seal numbers, and a notation indicating that freight had been prepaid. The shipper became bankrupt, and the bank lost the $5,200 which it had paid to the shipper for these bills of lading. It brought suit against the carrier, upon the theory that the carrier knew, at the time the bills were issued, that no eggs had been loaded into the cars; that it 'also knew that the bills were to be negotiated at the bank; and that the issuance of the bills constituted a fraud upon the bank. The carrier denied liability. The case was tried to the court without a jury. The defendant carrier requested findings of fact and declarations of law in its favor. The court found in favor of the bank, and entered judgment for $5,200. From this judgment the carrier has appealed.

The findings of fact and conclusions of law of the court below are challenged. The court found that the carrier knew that the cars were not loaded when it issued the bills, and knew or was charged with knowledge that it was the shipper's intention to negotiate these bills of lading at the bank; that the value of the eggs described in the bills of lading was $5,200; that the bank purchased the bills in good faith, believing that the cars had been loaded as stated therein; and that the goods described had been received by the carrier. The court concluded that the notation, "shipper's load and count," upon the bills of lading, did not relieve the carrier from liability for damages where no goods at all were loaded into the cars. The court did not find, and, from the evidence, could not have found, that the carrier intended to perpetrate or assist in perpetrating any fraud upon the bank. The court found that the bills were issued "in accordance with an established custom to issue such bills of lading upon request, depending upon Norris-Lyddon Produce Company to shortly thereafter load the car to conform with the bill of lading."

It is clear that, under the law as it existed prior to the enactment of the Federal Bill of Lading Act, approved August 29, 1916 (49 U. S. C. §§ 81–124 [49 USCA §§ 81–124]), there could have been no recovery of damages by the plaintiff bank.

In Pollard v. Vinton, 105 U. S. 7, 8, 26 L. Ed. 998, it was said:

"A 'bill of lading' is an instrument well known in commercial transactions, and its character and effect have been defined by judicial decisions. In the hands of the holder it is evidence of ownership, special or general, of the property mentioned in it, and of the right to receive said property at the place of delivery. Notwithstanding it is designed to pass from hand to hand, with or without indorsement, and it is efficacious for its ordinary purposes in the hands of the holder, it is not a negotiable instrument or obligation in the sense that a bill of exchange or a promissory note is. Its transfer does not preclude, as in those cases, all inquiry into the transaction in which it originated, because it has come into hands of persons who have innocently paid value for it. The doctrine of bona fide purchasers only applies to it in a limited sense.

"It is an instrument of a twofold character. It is at once a receipt and a contract. In the former character it is an acknowledgment of the receipt of property on board his vessel by the owner of the vessel. In the latter it is a contract to carry safely and deliver. The receipt of the goods lies at the foundation of the contract to carry and de- 'liver. If no goods are actually received, there can be no valid contract to carry or to deliver."

See, also, Friedlander v. Texas & Pacific Ry. Co., 130 U. S. 416, 9 S. Ct. 570, 32 L. Ed. 991; Missouri Pacific Railway Co. v. McFadden, 154 U. S. 155, 14 S. Ct. 990, 38 L. Ed. 944; The Carlos F. Roses, 177 U. S. 655, 665, 20 S. Ct. 803, 44 L. Ed. 929; Chicago & N. W. Ry. Co. v. Bewsher (C. C. A. 8) 6 F.(2d) 947; 10 C. J., p. 197, § 256.

The question to be determined, then, is whether, in view of the Federal Bill of Lading Act, the carrier is liable to the plaintiff bank under the circumstances of this case.

Section 22 of that act, as amended (U. S. C. Supp. 1933, tit. 49, § 102 [49 USCA § 102]) provides: "If a bill of lading has been issued by a carrier or on his behalf by an agent or employee the scope of whose actual or apparent authority includes the receiving of goods and issuing bills of lading therefor for transportation in commerce among the several States and with foreign nations, the carrier shall be liable to (a) the owner of goods covered by a straight bill subject to existing right of stoppage in transitu or (b) the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods, or upon the shipment being made upon the date therein shown, for damages caused by the nonreceipt by the carrier of all or part of the goods upon or prior to the date therein shown, or their failure to correspond with the description thereof in the bill at the time of its issue."

An exception to the rule that the carrier shall be liable for damages caused by the nonreceipt of all or part of the goods described in a bill of lading is found in section 21 of the act (49 U. S. C. § 101 [49 USCA § 101]): "The carrier may also by inserting in the bill of lading the words 'Shipper's weight, load, and count,' or other words of like purport indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading * * *."

■ It is well settled that where a shipper has failed to load all of the goods which an order bill of lading marked "shipper's load and count" calls for, or has loaded goods of a different kind, the carrier is not liable for any goods other than those which were actually received by it, even to an innocent purchaser of the bill. Dwinnell et al. v. Duluth, S. S. & A. Ry. Co., 242 Mich. 357, 218 N. W. 649; People's Savings Bank of Saginaw v. Pere Marquette Ry. Co., 235 Mich. 399, 209 N. W. 182, 183; Josephy et al. v. Panhandle & S. F. Ry. Co., 235 N. Y. 306, 139 N. E. 277; Gulf, C. & S. F. Ry. Co. v. Galbraith (Tex. Civ. App.) 39 S.W.(2d) 91; South Carolina Asparagus Growers' Ass'n v. Southern Ry. Co. (C. C. A. 4) 46 F.(2d) 452, 453; Leigh, Ellis & Co. v. Payne, Agent (D. C. N. D. Ga.) 274 F. 443; Chicago & N. W. Ry. Co. v. Bewsher (C. C. A. 8) 6 F.(2d) 947, supra.

■ The carrier here contends that this case falls within the exception to the general rule of liability, and that it was the intention of Congress that, where a shipper had undertaken to do the loading, and the bill of lading bore the notation "shipper's load and count," there should be no liability on the part of the carrier for "nonreceipt" of the goods described in the bill.

The bank, on the other hand, contends that, under the plain and literal language of the act, the carrier is only relieved of liability where it is true that "goods were loaded by the shipper," and, since it is not true that goods were loaded by the shipper, the carrier may not escape liability.

There is apparently only one case where this exact question has arisen. That case is Mid-City Trust & Savings Bank v. Chicago, Milwaukee & St. Paul Ry. Co., 192 Ill. App. 225. The statute there involved was not the Federal Bills of Lading Act, but a state statute containing the same language. The court said:

"The conditions which may relieve the carrier from liability are stated in this section of the statute [23] thus: 'The carrier may, also, by inserting in the bill the words "shipper's load and count" or other words of like purport, indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the non-receipt or by the misdescription of the goods described in the bill.' Regarding the words on the bill of lading before us, ' "Shippers" L C & Tally,' as indicating facts which would relieve the carrier from liability, it should be noted that the exculpatory result is conditioned not only on the presence of such words but also on the fact that they must 'be true.' Obviously there can be no 'shipper's load and count' where no goods whatever were received, and this, defendant claims to be the fact. The statutory words 'by the non-receipt' must refer to a situation where there was in fact a loading and tally of goods by the shipper but subsequently a shortage is found; to make them applicable to a case' where no goods whatever were received

would make them inconsistent with the fact of goods loaded and counted by the shipper.

"Under the statute and the facts appearing and conceded by the statement of claim and affidavit of defense, the defendant was liable * * *."

We are not prepared to hold that if the cars in question here had been sealed by the shipper, the freight prepaid, and the cars actually delivered to the carrier for transportation, as was indicated in the bill of lading, the bank could have held the carrier for damages because the cars were empty. If the effect of that portion of section 21 which we have quoted is to preserve to the carrier the defense of nonreceipt of goods where the loading of the cars is done by the shipper and where the bills of lading are marked "shipper's load and count," it seems to us that it is preserved to the carrier both in cases where there is a partial failure to load and in cases where there is a complete failure to load. To hold otherwise would be to compel the railroads, for their own protection, to make inspections of all cars loaded, or purported to have been loaded, by shippers, before such bills of lading are issued, the delay and expense of which Congress evidently desired to permit the railroads to escape. We cannot convince ourselves that if one egg or one case of eggs had been loaded into each of the cars furnished by the carrier to the shipper here, that fact could have affected the result of this case.

The weakness of the carrier's position here, it seems to us, lies in the fact that it issued the bills at a time when the cars were not loaded, when they were not sealed, when the freight was not paid, and when it had received neither the cars nor any order from the shipper to move them. In fact, the bills were issued at a time when all that the carrier had done was to place the cars for loading. There was nothing actually fraudulent in the issuance of these bills by the carrier, and it was following a custom with respect to this shipper which, over a period of eleven years, had caused no loss to anyone. The shipper, however, had no right to receive the bills at the time they were issued, and the carrier, by issuing the bills at the time it did, enabled the shipper to defraud the bank. The representations in the bills as to the contents of the cars, by virtue of the notation "shipper's load and count," were the representations of the shipper. The other representations, however, as to seals, as to prepayment of the freight, and as to the receipt of the cars for transportation, were those of the carrier, and they were not true when made, nor did they ever become true.

"It is a familiar principle of law that where one of two innocent parties must suffer by the fraud of another, the loss should fall upon him who enabled such third person to commit the fraud. * * *" Friedlander v. Texas & Pacific Railway Co., 130 U. S. 416, 425, 9 S. Ct. 570, 573, 32 L. Ed. 991, supra.

Prior to the enactment of the Bill of Lading Act, it would have been held that in such a case as this the carrier had done nothing to enable the shipper to impose upon the bank, because the agent of the carrier who signed the bills of lading was without authority to issue them until the goods had actually been received. Friedlander v. Texas & Pacific Railway Co., 130 U. S. 416, 425, 9 S. Ct. 570, 32 L. Ed. 991, supra. Under the Bill of Lading Act, however, the liability of the carrier for the acts of its agent in this regard was changed.

"Section 22 [of the Federal Bill of Lading Act, 49 USCA § 102] deals only with the former rule that agents having authority to receive merchandise and issue bills of lading were without implied authority to issue the latter except on receipt of the merchandise. It enlarged the agent's implied authority by imposing a new liability on the principal for the agent's act in issuing the bill, even though the merchandise was not received." Gleason v. Seaboard Air Line Ry. Co., 278 U. S. 349, 357, 49 S. Ct. 161, 163, 73 L. Ed. 415.

Therefore, if we are correct in our position that these bills were issued at a time and under circumstances when they should not have been issued, and that they contained representations by the carrier which were false, it would follow that the conclusion reached by the court below that, as between the bank and the carrier, the carrier must bear the loss occasioned by the shipper's fraud, was justified.

The judgment is affirmed.