## BOATMEN'S NAT. BANK OF ST. LOUIS v. ST. LOUIS SOUTHWESTERN RY. CO.

### No. 10005.

Circuit Court of Appeals, Eighth Circuit.

Jan. 25, 1935.

J. B. Daggett, of Marianna, Ark., and Charles Claflin Allen, Jr., of St. Louis, Mo. (C. E. Daggett and Daggett & Daggett, all

of Marianna, Ark., on the brief), for appellant.

N. F. Lamb, of Jonesboro, Ark. (A. H. Kiskaddon, of St. Louis, Mo., and Adair Dyer, of Dallas, Tex., on the brief), for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a judgment in favor of the appellee which was entered upon a directed verdict in an action at law brought by the appellant upon ten bills of lading which it had purchased from a partnership known as McGill Brothers Rice Mill. The appellant will be referred to as "the bank," the appellee as "the carrier," and the McGill Brothers Rice Mill as "the shipper." The essential facts are not in dispute, and are, briefly, as follows: The shipper purchased ten carloads of clean rice of fine quality; nine at Jonesboro, Ark., and one at De Witt, Ark. Jonesboro and De Witt will be called the "points of origin." The rice was loaded into cars belonging to the carrier, and moved over its line from the points of origin to Stuttgart, Ark., under domestic or local straight bills of lading, in which the shipper was named as consignor and consignee. The cars had been loaded by the shipper, and each of the bills recited that the contents of the cars were a certain number of "pockets clean rice" of a certain weight; that "contents and condition of contents of packages" were unknown; and the bills bore the notation "S. L. & C.," meaning "shipper's load and count." The car number and the numbers of the seals were shown in each of the bills. Upon arrival at Stuttgart, Ark., the carrier spotted the cars at the plant of the shipper. The shipper thereupon unloaded the rice and reloaded the cars with rice screenings, a low grade of rice, worth only a small amount as compared with the original contents of the cars. Shortly thereafter, the shipper made out and presented to the carrier's agent, at Stuttgart, exchange or reconsignment order bills of lading, each covering a certain number of "pockets clean rice," giving the weight. Each bill recited, "contents and condition of contents of packages unknown," and bore the notation "S. L. & C.," and contained the statement that the bill was issued in exchange for a bill of lading issued at the point of origin on a specified date. The consignor was the shipper, and the shipment was consigned to its order;

the destination of seven of the cars was New Orleans, of two of the cars, Charleston, S. C., and of one car, Philadelphia. The ten reconsignment bills of lading, with drafts attached, were purchased by the bank from the shipper in the regular course of business. The drafts were not paid. The seven cars sent to New Orleans were delivered to the bank, which paid the freight and sold the screenings at the market price. The other three cars were not delivered to the bank. The shipper became bankrupt, and the bank lost a large sum of money because of its purchase of the bills of lading. It brought suit against the carrier, claiming that the bills of lading entitled it to receive, and required the carrier to deliver, not the screenings which were loaded into cars at Stuttgart, but the rice which had originally been loaded at points of origin and which was removed from the cars at Stuttgart. The carrier at first denied all liability, but eventually admitted that it was liable to the bank for the three cars which the bank never received, but that the extent of its liability was the value of the screenings shipped in those cars from Stuttgart. The court below was of the opinion that the bills of lading called for the delivery by the carrier of the screenings, and not the rice which it had received at the points of origin, and directed verdicts accordingly.

While these bills bore the notation that the contents of the packages were unknown, and also the notation "S. L. & C.," the bank contends that, since the bills of lading were exchange or reconsignment bills which could only be issued for shipments which had remained intact from the points of origin, they constituted receipts for and contracts to transport the original ladings of the cars and not what was substituted for such original ladings at Stuttgart.

The carrier's contention is that the bills which the bank purchased were merely evidence of the bank's title to, and its right to receive, the screenings which the shipper had placed in the cars at Stuttgart.

We do not find that the exact question presented has ever been passed upon before. It is, of course, conceded, as it must be, that a carrier who issues a bill of lading, although it be marked "shipper's load and count," is liable for whatever the carrier actually receives from the shipper. See Chicago & N. W. Ry. Co. v. Bewsher (C. C. A. 8) 6 F.(2d) 947; Chicago & N. W. Ry. Co. v. Stephens National Bank of Fremont (C. C. A. 8) 75 F.(2d) 398, opinion filed Jan-

uary 25, 1935; Dwinnell et al. v. Duluth, S. S. & A. Ry. Co., 242 Mich. 357, 218 N. W. 649. The question, then, is whether the liability of the carrier, under the circumstances of this case, is dependent upon the lading actually received from the shipper at the points of origin, or upon that which it subsequently received at Stuttgart and carried under reconsignment bills of lading from that place to destinations.

■ It is also conceded that, under the applicable tariffs relating to exchange or reconsignment bills of lading, the carrier had no right to issue exchange or reconsignment bills at Stuttgart, since they could only be issued for the further transportation of cars where the lading received at point of origin had remained intact. The agent of the carrier at Stuttgart testified that had he known that the cars had been unloaded and screenings substituted, he would not have issued the exchange bills; that the issuance of such bills was an oversight on the part of his office. The general freight claim agent of the carrier testified, "The railroad company treated the shipments as direct shipments from Jonesboro to final destination as a through, or reconsigned shipment from Jonesboro," and further testified that the shipment moved on the through rate, whereas the rate charged should have been a combination of local rates. The issuance of the exchange bills was clearly due to either the negligence of the carrier's agents at Stuttgart or to their connivance with the shipper, but, in our view, it is unimportant how they came to be issued.

■ It seems to us that, since the reconsignment bills of lading could only be issued for shipments that had not "broken bulk," the notation "S. L. & C." could be regarded as referring only to the load and count of the shipper at points of origin, because there could be no reloading or recounting of the shipment at Stuttgart if the cars were reconsigned from that point. The statement, "contents and condition of contents of packages unknown," must also be regarded as applying to the contents at points of origin, since the cars were to move under the recon-

signment bills with seals unbroken. And it was clearly the duty of the carrier to see that no reconsignment bills were issued except in accordance with the tariff regulations. Its failure to do so resulted in the application of a rate not authorized and one which was clearly discriminatory.

Section 31 of the Bill of Lading Act (49 U. S. C. § 111 [49 USCA § 111]) provides:

"A person to whom an order bill has been duly negotiated acquires thereby— * * *

"(b) The direct obligation of the carrier to hold possession of the goods for him according to the terms of the bill as fully as if the carrier had contracted directly with him."

■ The carrier should be required to make good to the bank, which purchased these bills of lading in the ordinary course of business for value and without knowledge of their infirmities, what the carrier had represented in the bills of lading in suit. See Pollard et al. v. Reardon (C. C. A. 1) 65 F. 848; McNeil v. Hill (C. C. D. of Minn.) 16 Fed. Cas. page 325, No. 8,914; The Carso (D. C. S. D. of N. Y.) 43 F.(2d) 736.

In these bills the carrier held out, either expressly or by necessary implication, that it had received at Stuttgart, and had agreed to transport from Stuttgart to destination, the goods which had been loaded and counted by the shipper and delivered to it at points of origin, and that these shipments had remained intact since they were loaded at those points, and would be delivered at points of destination with bulk unbroken.

What transpired at Stuttgart with respect to the substitution of screenings for rice was immaterial. Since the reconsignment bills of lading required the delivery by the carrier of the rice received at points of origin, it could not escape liability to the bank by showing that the shipper had unloaded the rice at Stuttgart without its knowledge.

The judgment is reversed, and the case remanded, with directions for further proceedings not inconsistent with this opinion.