**SOUTHERN PACIFIC COMPANY,**
Appellant,

v.

BUILDERS HARDWARE, INC., Appellee.

No. 14380.

Court of Civil Appeals of Texas.

Houston.

Oct. 15, 1964.

Rehearing Denied Nov. 5, 1964.

Baker, Botts, Shepherd & Coates, John A. MacDonald, Jr., Houston, for appellant.

Newton M. Crain, Jr., Houston, Blades, Crain, Slator & Winters, Houston, of counsel, for appellee.

WERLEIN, Justice.

This suit was brought by appellee, Builders Hardware, Inc., to recover the value of a portion of a shipment of steel bars that it never received. The case was tried to the court without a jury and the court rendered judgment against appellant, Southern Pacific Company, in the sum of $3,834.09. The judgment of the court shows that all of the defendants in the suit were disposed of and that judgment was rendered solely against appellant. Appellee took a nonsuit against The Lynch Company, Inc., and Pan American Trade Development Corp., hereinafter called Pan American, filed a motion for summary judgment which was granted. The judgment provides that appellant take nothing against "Orion" Schiffahrts-Ges Reith & Co., hereinafter called Orion, and Freemar Line, and shows that Houston Belt & Terminal Railway Company, hereinafter referred to as Belt, was dismissed from the suit on its motion. For an understanding of the case and appellant's points of error, it seems advisable to set out briefly some of the rather confusing facts giving rise to the suit.

A total of 532 lifts of steel reinforcing bars were loaded aboard the SS Beteigeuze in Europe in September, 1959 for shipment to Pan American, as consignee, % W. R. Zanes & Co., Houston, Texas, hereinafter called Zanes, under Ship Bills of Lading Nos. 28 (for 120 lifts) and 40 (for 422 lifts), which bills acknowledged receipt of the entire shipment in good order. While said shipment was enroute to Houston, Pan American sold the entire shipment to Lynch Company, which in turn transferred the same to appellee, and appellee paid the entire purchase price. Before instructions for delivery were given to the ship agents, Hinkins-Hall SS Company, by Zanes, appellee sold to San Jacinto Sales Co., its claimed joint enterpriser, a portion of the lifts. The SS Beteigeuze was chartered by Orion, its owner, to the defendant, Freemar Line.

At the request of appellant, the court made its findings of fact and conclusions of law. Among other things, the court found that Hinkins-Hall was directed by Freemar Line to unload the 532 lifts of steel bars into railroad cars; that 45 of the lifts sold by appellee to San Jacinto Sales Co. were in turn to be delivered to the Dorsid Trading Co.; that 422 lifts of the steel bars loaded on the SS Beteigeuze under Ship Bill of Lading No. 40 were unloaded at Houston on November 9 and 10, 1959, into waiting railroad cars and were checked as they were unloaded by E. L. King on behalf of Hinkins-Hall; that the bill of lading issued by Belt on November 19, 1959 acknowledged receipt of 227 lifts out of the total shipment of 532 lifts, in

good order, to be delivered to San Jacinto Sales Co., which actually received 228 lifts; that one bill of lading dated November 19, 1959 was issued by appellant, acknowledging receipt of 245 lifts, to be delivered to appellee, and the same were delivered; that appellant on November 19, 1959, issued a second bill of lading acknowledging receipt of 60 lifts to be delivered to appellee, which company was served only by appellant; that on November 10, 1959, said 60 lifts, out of the 422 lifts, under Ship Bill of Lading No. 40, had been discharged from said ship in good order into Railroad Car No. MP 22638; that the entire 532 lifts were duly cleared through the United States Customs and customs duty thereon was paid; that Car MP 22638 containing 60 lifts was to be delivered by appellant to appellee, for the unloading of 15 of such lifts, and it was thereafter the intention of appellee to have a new bill of lading issued directing the remaining 45 lifts to be delivered to Dorsid Trading Co.; that neither Railroad Car No. 22638 nor the 60 lifts of steel bars placed on it for delivery to appellee was ever delivered to the appellee or its order by appellant, and Dorsid Trading Company never received any part of the 45 lifts it was to receive, and that appellee absorbed the entire loss since it did not receive sufficient lifts to make delivery to Dorsid Trading Company; that thereafter appellant discovered Car No. MP 5635 on the Houston docks containing 28 lifts of steel which did not bear the same marks as any of the 532 lifts, but appellee agreed to accept such 28 lifts and credit them against its total loss, and said Car MP 5635 was delivered to appellee without appellant issuing a bill of lading; that appellee also gave credit for one extra lift of bars delivered to San Jacinto Sales Company, thereby reducing its loss to a total of 31 lifts; that no part of said 31 lifts has ever been delivered to appellee or its order, and the fair market value of the same was $3,834.09 which has never been paid in whole or part. No additional findings of fact were requested by appellant.

Appellant in its first six Points of Error asserts that the court erred in entering judgment predicated on the enforcement of a cancelled contract; that the court erred in refusing to grant appellant a directed verdict; that there was no evidence and also insufficient evidence to show that appellant received 60 lifts belonging to appellee which it failed to deliver; and that the court's Conclusion of Law No. 2 has no support in the evidence and is against the great weight of the evidence. The Court's Conclusion No. 2 reads as follows:

"That the Defendant, Southern Pacific Company, received 60 lifts of the steel reinforcing bars loaded aboard Car No. MP 22638 in good order and condition and issued its Bill of Lading on November 19, 1959, acknowledging receipt of same in good order and condition. That the Defendant, Southern Pacific Company, never delivered said car No. MP 22638 or any of the 60 lifts of steel reinforcing bars to Builders Hardware, Inc. or to its order, the said Builders Hardware, Inc. being the consignee named on the bill of lading covering the said car and its contents and its shipment by the Southern Pacific Company and the Southern Pacific Company has neither pleaded nor proven any excuse for its failure to so deliver said 60 lifts of steel reinforcing bars. It is therefore liable to the Plaintiff, Builders Hardware, Inc., for the fair market value of the 60 lifts of steel reinforcing bars contained in said car No. MP 22638 which it failed to deliver, less the fair market value of the 29 lifts for which plaintiff gave credit against its total loss, or the total sum of $3,834.09."

Elbert L. King, who was an employee of Hinkins-Hall in November, 1959 but not since 1959, testified in substance that he was deck clerk and checker at No. 4 hold on board the SS Beteigeuze on November 9, and 10, 1959; that on such days the cargo of 422 lifts under Ship Bill of Lading

No. 40 was discharged from such hold into waiting railroad cars; that he prepared and kept tally sheets as the steel came out of the hold in order to keep track of the number of lifts discharged thèrefrom and he would mark down the number of lifts placed in a certain car after they got to the car; and that he was on the deck most of the time but had occasion to go into the cars.

After looking at the tally sheet which he had made and signed (Freemar's Exhibit No. 1) and refreshing his memory thereby, he testified that 60 lifts of the steel from No. 4 hold were placed in Car MP 22638 as shown on the tally sheet. Freemar's Exhibit No. 2, also introduced in evidence, shows U. S. Customs Service Release as of November 10, 1959 of the 422 lifts under Ship's Bill of Lading No. 40.

It is our view that independently of the bills of lading issued by appellant, the unequivocal testimony of Mr. King was evidence of probative force that 60 lifts of the steel bars under Ship Bill of Lading No. 40 belonging to appellee were placed in Car MP 22638 and delivered into appellant's possession on November 9 or 10, 1959. Appellant wholly failed to show what happened to such car between November 10 and November 17, 1959 when it was located on the appellant's tracks at Nationwide Supplies in Houston. It was there unloaded on November 19 or 20 and found to contain only 41 lifts which were a part of 188 lifts that Nationwide had purchased and which were delivered to that company under Ship Bills of Lading Nos. 17 and 27. What became of the 60 lifts originally placed in such car was never explained by appellant and has remained a mystery.

On November 19, 1959 after Car No. MP 22638 had been delivered to Nationwide Supplies and was there unloaded or in the process of being unloaded, appellant issued three bills of lading, one for 245 lifts of steel bars ex SS Beteigeuze consigned to appellee which were delivered in due course, as found by the trial court, one for 60 lifts of steel bars from such ship consigned to appellee which were never delivered, and one for 188 lifts consigned to Nationwide Supplies, and delivered in four cars, one of which was MP 22638 containing 41 lifts.

Appellant contends that the court, in entering judgment against it, predicated such judgment on the enforcement of a cancelled contract. The evidence shows that the original bill of lading covering the 60 lifts was not introduced in evidence but that a true copy thereof retained by Zanes for its record was introduced in evidence without objection when the handwritten notation thereon was explained. Such notation reads: "11/25/59 returned orig. to SP for cancellation, car contained 41 lifts $\frac{1}{2} \times 20$ for Nationwide ex BL 17." The copy of the bill of lading shows that 15 of the lifts out of the 60 were to be delivered to appellee for removal and the balance of 45 lifts were to be delivered at Byers Barge Terminal.

There is evidence that Zanes' clerk, Mr. Moers, prepared the bills of lading according to appellee's instructions, and presented the same to the Railroad. Appellant's freight claims agent testified that the bill of lading covering the 60 lifts consigned to appellee was executed by an authorized representative of the carrier, Southern Pacific. After it was discovered that the car in question had been delivered and unloaded at Nationwide, Moers on November 25, 1959 returned the original bill of lading covering the 60 lifts to appellant for cancellation. The evidence also shows that the United States Customs cleared the entire number of 532 lifts ex Bills of Lading Nos. 40 and 28 SS Beteigeuze.

It is undisputed that the bill of lading dated November 19, 1959, covering the 60 lifts in question was executed by the duly authorized representative of appellant on November 20, 1959 and was not can-

-celled until November 25, 1959. It was not cancelled with the consent or authorization of appellee or by anyone authorized to represent it. Furthermore, appellant at no time pleaded the affirmative defense of cancellation of such bill of lading, as required by Rule 94, Texas Rules of Civil Procedure. Even if it can be said that such bill of lading did not acknowledge receipt of any definite number of lifts in good order to be delivered to appellant, in view of the words stamped thereon: "Received subject to check sheet & inventory on file, Houston, Texas," initialed "S L C," it did acknowledge that appellant was the delivering carrier of Car MP 22638. That it had possession and control of such car is further evidenced by the fact that appellant did in fact deliver such car on its tracks to Nationwide. This is not a case of a shortage in quantity, improper loading, breakage or damage to goods within the purview of 49 U.S.C.A. § 101. In this case neither Car MP 22638 nor any steel therein was delivered to the consignee under the bill of lading or otherwise. The unimpeached testimony of Mr. King shows that 60 lifts were discharged from the ship into such car, and the bill of lading on its face calls for that number of lifts. The law is well settled that a carrier who issues a bill of lading, although it be marked "Shippers load and count," is liable for whatever the carrier actually receives from the shipper. The receipt of the goods lies at the foundation of the contract to carry and deliver. Boatmen's Nat. Bank of St. Louis v. St. Louis Southwestern Railway Co., 8 Cir., 75 F.2d 494, cert. den. 295 U.S. 751, 55 S.Ct. 830, 79 L.Ed. 1695; Chicago & N. W. Ry. Co. v. Bewsher, CCA 8, 6 F.2d 947; Chicago & N. W. Ry. Co. v. Stephens Nat. Bank of Fremont, CCA 8, 75 F.2d 398, cert. den. 295 U.S. 738, 55 S.Ct. 650, 79 L.Ed. 1685; Dwinnell et al. v. Duluth, S. S. & A. Ry. Co., 1928, 242 Mich. 357, 218 N.W. 649.

■ The shipment in question, being one moving in foreign commerce, was governed by the Federal law, but, as stated by Justice Walker in Missouri-Pacific R. Co. v. Elmore & Stahl, Tex.Sup.1963, 368 S.W.2d 99, the provisions of the Carmack Amendment, 49 U.S.C.A. § 20(11), do not alter or modify the basic common law rule of carrier liability. See Cincinnati, N. O. & T. P. R. Co. v. Rankin, 241 U.S. 319, 36 S.Ct. 555, 60 L.Ed. 1022; Secretary of Agriculture v. United States, 350 U.S. 162, 76 S.Ct. 244, 100 L.Ed. 173. The Carmack Amendment does not change the pre-existing common law as to liability of rail carriers for damage caused to shipments which occurred on the line of the carrier sued while the merchandise was in the possession of such carrier. Louisiana Southern Railway Co. v. Anderson, Clayton & Co., 5 Cir., 191 F.2d 784; United States v. Mississippi Valley Barge Line Co., 8 Cir. 1960, 285 F.2d 381.

■ In the instant case there is ample evidence that the 60 lifts of steel bars in question were discharged from the ship and into Car MP 22638, and that neither the car nor the steel bars were ever delivered. Appellant failed to exonerate itself from liability for nondelivery of the car and steel by showing that such failure was caused by one or more of the four excepted perils: "(1) An act of God; (2) Public enemy; (3) The fault of the shipper, or (4) The inherent nature of the goods themselves." See Chesapeake & O. R. Co. v. Thompson Mfg. Co., 270 U.S. 416, 46 S.Ct. 318, 70 L.Ed. 659; Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373.

Appellant in its last two points complains that the trial court erred in overruling its motion for new trial based on newly discovered evidence which indicated that appellee's Exhibits 4 and 6 had been admitted into evidence on the basis of false testimony. Appellant in its motion for new trial asserts that Dorsid was advised on November 17, 1959 that the rail movement in Car MP 22638 had been cancelled because it was all mixed up. It further as-

serts that 40 lifts of steel from the Beteigeuze were delivered to Dorsid by trucks on December 9, 1959, and that Dorsid paid San Jacinto Sales the sum of $5,284.74 on December 23, 1959.

Appellee's Exhibits 4 and 6 showing the total number of lifts delivered to appellee and San Jacinto Sales Co. and the shortage of 31 lifts, were admitted in evidence without objection. San Jacinto Sales Co. received from Belt the 227 lifts it was entitled to under the bill of lading issued by Belt, and one additional lift. Appellee makes no complaint concerning delivery of such lifts nor does San Jacinto Sales Co., which was not a party to the suit. The evidence shows that from the 60 lifts which were to be delivered in Car MP 22638 appellee intended to remove 15 lifts and forward the balance of 45 lifts to Dorsid Trading Co. at Byers Barge Terminal, under its arrangement with San Jacinto Sales Company. The bill of lading in question contains the typewritten notation: "Car to be switched to Builders Hardware for removal of 15 lifts and then to Byers Barge Terminal for 45 lifts." There is no evidence in the record that such 45 lifts were ever delivered to Dorsid. The evidence is just to the contrary. Appellee bore the entire loss of the 60 lifts as reduced by the subsequent receipt of the 28 lifts, as hereinabove stated, and the one additional lift delivered by Belt to San Jacinto Sales Co.

In its motion for new trial appellant asserts that it later discovered that 40 lifts of steel from the SS Beteigeuze were delivered by San Jacinto Sales Co. to Dorsid by trucks on December 9, 1959, pursuant to a contract between San Jacinto Sales Co. and Dorsid Trading Co. dated November 5, 1959 which provided for delivery of same F.O.B. car or truck. The trial court found that Car MP 22638 containing 60 lifts was to be delivered to appellee by appellant for the unloading of 15 of such lifts, and it was thereafter the intention of appellee to have a new bill of lading issued directing the remaining 45 lifts which it sold to San Jacinto Sales Co. to be delivered to Dorsid Trading Co.; and that neither Railroad Car. No. 22638 nor the 60 lifts of steel bars placed on it for delivery to appellee were ever delivered to the appellee or its order by appellant, and Dorsid Trading Co. never received any part of the 45 lifts it was to receive, and that appellee absorbed the entire loss since it did not receive sufficient lifts to make delivery to Dorsid Trading Co.

We find no inconsistency whatever in the court's findings and the statement made by appellant that 40 lifts of steel were delivered by San Jacinto Sales Co. to Dorsid by trucks on December 9, 1959 pursuant to the contract between them dated November 5, 1959. There is no evidence whatever connecting up such 40 lifts with the 45 lifts which were a part of the 60 lifts discharged into Car MP 22638. It is our view, therefore, that the alleged newly discovered evidence on the part of appellant was not material to any issue in the case and that the court properly overruled appellant's motion for new trial in the exercise of his discretion.

Furthermore, we are of the opinion that appellant failed to exercise reasonable diligence in obtaining the additional evidence of the sale and delivery to Dorsid by San Jacinto Sales Co. from its warehouse of 40 lifts, although certain records were in the hands of the F.B.I. as stated by appellant. The only possible effect that such evidence could conceivably have would have been to attempt to impeach the testimony of witnesses who actually testified at the trial, and then only as to irrelevant matters. See Davis Bumper-to-Bumper, Inc. v. Roberts, Tex.Civ.App., 331 S.W. 2d 762; Jordan v. New Amsterdam Casualty Co., Tex.Civ.App., 353 S.W.2d 256; Houston Fire & Casualty Insurance Company v. Miller, Tex.Civ.App., 237 S.W.2d 461.

We have carefully read the entire statement of facts and examined all of the exhibits introduced in evidence, and are of the opinion that the court's findings of fact and conclusions of law are amply supported by evidence of probative force. We cannot say that such findings of fact are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Judgment affirmed.