## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### NORFOLK TERMINAL CORPORATION v. UNITED STATES LINES, INC.

June 10, 1974.

Record No. 730578.

Present, All the Justices.

*George H. McNeal, III (Wolcott, Spencer, Rivers & McNeal,* on brief), for plaintiff in error.

*John W. Winston (Seawell, McCoy, Winston & Dalton,* on brief), for defendant in error.

Cochran, J., delivered the opinion of the court.

On November 14, 1969, the PIONEER CRUSADER, a ship operated by United States Lines, Inc. (U. S. Lines), sailed from Norfolk, leaving on the pier a number of cartons of cotton goods owned by Dan River International Corporation (Dan River) which had been booked for the voyage. After paying Dan River the sum of $4,756.81 in settlement of its claim for non-delivery of the cartons to its consignee in Hong Kong, U. S. Lines filed a motion for judgment against Norfolk Terminal Corporation (NTC) seeking reimbursement for this payment.

The motion for judgment alleged that U. S. Lines' failure to load the goods on board the PIONEER CRUSADER was caused by the negligence of NTC in failing to notify U. S. Lines that the cartons had been received by NTC and in failing to deliver the cartons to U. S. Lines for loading onto the ship. When this action came to trial, the amount in controversy was reduced to $3,786.60 because U. S. Lines conceded that three of the undelivered cartons could not be charged to NTC, the claimed value of each carton, including freight, being $323.40. The trial court, sitting without a jury, heard the evidence and entered judgment in favor of U. S. Lines for the amount claimed, with interest and costs. We granted NTC a writ of error to the judgment order.

The shipment of cotton goods was the subject of a contract of carriage between Dan River and U. S. Lines. A "Booking Memo" dated November 5, 1969, shows that U. S. Lines had booked 351 cartons of Dan River's cotton piece goods for carriage to Hong Kong on the PIONEER CRUSADER. The memo provided that Dan River was to "stuff" (load) the cartons into five shipping containers at its plant in Danville and to ship the loaded containers by motor carrier to NTC's terminal in Norfolk. If the five containers did not accommodate all the cartons, Dan River was to ship the excess cartons to the terminal for stuffing.

Wilson Babb, Assistant Manager of the Norfolk office of U. S. Lines at the time of the shipment, testified that U. S. Lines was able to provide Dan River with only three containers. Dan River stuffed the containers, sealed them, and shipped them to the NTC terminal via Old Dominion Freight Line, a motor carrier.

NTC received the containers and placed them berthside on its pier; U. S. Lines then loaded the containers on board the PIONEER CRUSADER.

On November 12, 1969, Dan River loaded the excess cartons into two trailers, which Old Dominion hauled to Norfolk. The first trailer arrived at NTC's terminal at 11:45 a.m. on November 13, 1969, and was unloaded on the pier between 1:30 p.m. and 4:30 p.m. NTC stuffed the cartons into three containers, which were loaded by U. S. Lines onto the PIONEER CRUSADER.

The second Old Dominion trailer also arrived at the terminal on November 13, 1969. Twenty cartons were unloaded from this vehicle onto the pier in the vicinity of the other cartons between 2:30 p.m. and 3:00 p.m.

When the PIONEER CRUSADER arrived in Hong Kong, the consignee reported to Dan River that its shipment was short by 26 cartons. Dan River discovered that it had failed to load three cartons in Danville but made claim against U. S. Lines for the remaining 23 cartons. Two of the undelivered cartons were found in the possession of Old Dominion and one other carton was, by U. S. Lines' concession, not chargeable to NTC. This left 20 cartons in controversy, of which 18 cartons were found in the NTC warehouse after the short shipment had been reported. Dan River credited U. S. Lines with the salvage value of these 18 cartons.

Both U. S. Lines and NTC appear to have assumed throughout this litigation that the 20 cartons unloaded from the second Old Dominion trailer onto the pier at the NTC terminal were never loaded on board the PIONEER CRUSADER. This assumption is not entirely correct. Each of the cartons was numbered. A comparison of these carton numbers with the numbers on cartons reported undelivered in Hong Kong shows that the carton numbered 389934, listed as one of the 20 cartons unloaded from the second Old Dominion trailer at the NTC terminal, was not reported undelivered by the consignee in Hong Kong. Hence, this carton was apparently stuffed into a container with other cartons from the first Old Dominion trailer and delivered as required in Hong Kong. The numbers on the remaining 19 cartons unloaded from the second Old Dominion trailer appear on the list of cartons reported undelivered in Hong Kong. It thus appears that 19 of the 20 cartons remained on the NTC pier

when the PIONEER CRUSADER sailed from Norfolk. The evidence shows that there was room for these cartons in the containers in which the cartons from the first trailer were stuffed.

W. F. Morris, who was a loading checker employed by NTC in November, 1969, testified that, while he and another employee were stuffing into three containers the cartons unloaded onto the pier from the first Old Dominion trailer, he noticed the 20 cartons from the second trailer lying nearby and inquired whether they should be stuffed also. Morris said that he was specifically instructed by an unidentified person that the 20 cartons were not to be stuffed.

There was no direct evidence that U. S. Lines had ordered NTC to stuff Dan River's cartons into containers. Old Dominion's waybill shows that the word "stuffed" is hand printed next to the signature of the NTC employee who received the 20 cartons, but the word "stuffed" does not appear on NTC's copy of the waybill. U. S. Lines' copy of the cargo list contains a typewritten statement that five containers were expected from Dan River and the hand printed note: "REST OF CARGO VIA OLD DOMINION TO BE STUFFED." The hand printed note does not appear on NTC's copy of the cargo list.

U. S. Lines issued an Ocean Bill of Lading to Dan River covering the six containers loaded on board the ship, stating that they were "said to contain 351 ctns cotton/polyester piece goods." The carrier did not learn of the loose cartons on the pier until the ship had off-loaded at Hong Kong. John Cole, Pier Superintendent for U. S. Lines, testified that, although he worked in the berthside area of the pier, he had never noticed the 20 cartons. He further testified that he would not have looked for the cartons because the cargo list, from which he worked, showed that Dan River's goods would be shipped in containers.

■ NTC's first argument is that U. S. Lines cannot recover because the carrier acted as a volunteer when it paid Dan River's claim. If U. S. Lines was not legally liable for the claim, but paid it out of a spirit of generosity or a feeling of moral responsibility, then the carrier has suffered no legally cognizable damages. *See City of Richmond* v. *Hanes*, 203 Va. 102, 108, 122 S.E.2d 895, 900 (1961). Since the evidence shows that one of the 20 cartons in controversy was delivered to Hong

Kong, U. S. Lines acted as a volunteer in paying for the alleged loss of this carton, and cannot properly claim reimbursement for it.

■ U. S. Lines was liable to Dan River for non-delivery of the remaining 19 cartons if the 20 cartons in controversy were delivered to U. S. Lines and accepted by the carrier for transport. At common law a carrier is absolutely liable for the safe carriage and delivery of its cargo, the only exceptions occurring when the carrier is able affirmatively to prove that the cargo was damaged or destroyed by act of the shipper, act of God, act of public enemy, act of public authority, or the inherent nature of the cargo. *C & O Ry. Co.* v. *Osborne*, 154 Va. 477, 153 S.E. 865 (1930). Although Congress has provided certain statutory exceptions to the common law rule for water carriers engaged in interstate or foreign commerce[1], neither the common law exceptions nor the statutory exceptions are applicable to the present case. Consequently, NTC can establish that U. S. Lines was a volunteer only by showing that the carrier's high standard of liability never attached with respect to the 20 cartons.

■ NTC asserts that U. S. Lines never became liable for carriage of the 20 cartons because the carrier's agreement with Dan River was too uncertain to be enforced as a contract. Reasoning that one cannot have a contract for something unknown to him, NTC argues that notice of delivery of the 20 cartons was a condition precedent to U. S. Lines' liability for carriage. As U. S. Lines was never told that the 20 cartons had arrived at the terminal, NTC argues that no contract was ever formed for the carriage of these goods. We do not agree.

The booking memo contemplated the delivery of loose cartons as well as containers to the NTC terminal, yet it made no provision that any additional notice of delivery was a condition precedent to the contract of carriage. Moreover, the circumstances of the delivery give further indication that U. S. Lines had agreed to carry the 20 cartons. So far as the carrier knew, 351 cartons were to be shipped in containers to Hong Kong. (Dan River actually undertook to ship 362 cartons, including the three cartons that it failed to load in Danville.) U. S. Lines also knew that the three containers furnished to Dan

---

[1] See the exemption provision of the Harter Act, 46 U.S.C. § 192, and a similar provision of the Carriage of Goods by Sea Act, 46 U.S.C. § 1304.

River were insufficient to accommodate all the cartons, and that Dan River would therefore deliver a substantial number of loose cartons to the terminal. Although there is evidence that U. S. Lines received no notice of the arrival of the cartons unloaded from the first Old Dominion trailer, this cargo was duly stuffed into containers at the terminal, together with one of the 20 cartons unloaded from the second Old Dominion trailer.

From this evidence the trial court could reasonably have inferred that U. S. Lines had agreed to carry all the loose cartons shipped to the pier and stuffed into not more than three containers. The carrier was not entitled to assume that the loose cartons would all be transported in one trailer. As the cartons from the first trailer were still being stuffed when the additional 20 cartons arrived, there was no delay in the shipment that would be prejudicial to U. S. Lines.

U. S. Lines' liability as a carrier attached when Dan River delivered the 20 cartons to NTC. Generally, cargo must be delivered to a carrier in order for the carrier to become liable for the safe carriage thereof. *Michigan Millers Mut. Fire Ins. Co.* v. *Canadian Northern Ry. Co.*, 152 F.2d 292, 295 (8th Cir. 1945). Where the parties have agreed that cargo should be deposited at a particular place and without express notice to the carrier, such delivery is sufficient to initiate the carrier's liability. *Illinois Central Railroad* v. *Moore*, 228 F.2d 873, 877 (6th Cir. 1956). In the present case, Dan River was to deliver the goods for carriage by shipping them to NTC's terminal. Delivery was complete when the goods were placed in NTC's custody, for there remained no act precedent to carriage which the shipper was required to perform. *Id.* Any further handling of the goods prior to carriage was to be performed by NTC, acting under instructions given by U. S. Lines. Consequently, U. S. Lines was liable to Dan River for any loss resulting from NTC's failure properly to prepare the cargo for carriage.

Moreover, counsel for NTC conceded in oral argument that the 20 cartons were delivered into the actual custody of U. S. Lines when they were placed berthside on the pier. NTC has therefore abandoned any contention that U. S. Lines could have avoided liability to Dan River by asserting non-delivery of the cargo.

NTC contends that U. S. Lines was excused from liability for the 20 cartons because the Ocean Bill of Lading stated that

the containers were "said to contain 351 ctns." NTC argues that under the Pomerene Bill of Lading Act § 21, 49 U.S.C. § 101, such language on a bill of lading disclaims liability for a short shipment. The language of the statute, however, shows that it applies only to bulk freight loaded by a shipper, such as the containers into which cartons were stuffed by Dan River. The 20 cartons in controversy were not packed in bulk when delivered to U. S. Lines. Moreover, such language does not disclaim liability for goods which are actually received by a carrier. *Southern Pacific Co.* v. *Builders Hardware, Inc.*, 382 S.W.2d 149, 153 (Tex. Civ. App. 1964); *Boatmen's Nat. Bank* v. *St. Louis Southwestern Ry.*, 75 F.2d 494 (8th Cir.), *cert. denied*, 295 U.S. 751 (1935). Here, it is established that the 20 cartons were delivered to and thus received by U. S. Lines.

■ This case was tried, without objection, as a tort action, rather than as an action for breach of a contract to stuff cartons into containers. However, NTC's duty to stuff the cartons must have originated, if at all, in such a contract.

In contesting the trial court's determination that NTC had a contractual duty to stuff the 20 cartons NTC relies primarily on its Tariff Item No. 1190, which provides in pertinent part:

"Segregation and Sorting.

"If, after cargo has been sorted, graded and stowed and/or assembled on the Terminal awaiting delivery as per bill of lading, the consignee, thereafter, desires additional sorting, grading and/or specific selection of said cargo in connection with the subsequent loading thereof, a written request detailing the nature of the special services desired must be submitted in advance of loading to the Terminal Management. . . ."

NTC contends that the 20 cartons were subject to this tariff; that they were delivered to the PIONEER CRUSADER in accordance with the bill of lading; and that U. S. Lines failed to provide written instruction that the cartons should be stuffed into containers. NTC insists that it therefore never entered into any contract for the stuffing of the 20 cartons. U. S. Lines argues persuasively, however, that the evidence, received without objection, that NTC stuffed the cartons delivered by the first Old Dominion trailer constitutes an admission from which the trial court could have inferred that U. S. Lines had given

NTC valid instructions to stuff all the loose cartons delivered to the pier by Dan River, including the 20 cartons. This argument is strengthened by the additional evidence that one of the 20 cartons was stuffed into a container and that NTC personnel stuffed two more cartons than the 163 that the NTC loading checker had signed as having received from the first Old Dominion trailer. Furthermore, the same loading checker, J. Wilson, signed the waybill acknowledging receipt of the 20 cartons delivered to the pier in the second Old Dominion trailer and the NTC Checker's Cargo Tally for the same 20 cartons. Both the waybill and Checker's Cargo Tally stated that the cartons were for the PIONEER CRUSADER.

This evidence was sufficient for the trial court to find that NTC negligently breached a duty arising out of a contract when it failed to stuff the remaining 19 cartons into containers. The trial court could reasonably have inferred that NTC learned of the arrival of the 20 cartons while the other cartons were being stuffed and that in the exercise of ordinary care should have either stuffed all 20 of the cartons or obtained further instructions from U. S. Lines.

NTC insists that U. S. Lines was contributorily negligent as a matter of law; that such negligence was a proximate cause of the loss; and that U. S. Lines is therefore barred from recovery. We do not agree. The trial court had before it all the evidence from which it could pass on the questions of negligence and contributory negligence. We cannot say as a matter of law that the trial court erred in resolving these issues in favor of U. S. Lines.

We have considered the other errors assigned by NTC and have concluded that such errors, if any, were harmless as a matter of law.

The judgment order entered by the trial court awarded judgment to U. S. Lines against NTC in the sum of $3,786.60, the amount sued for, with interest and costs. This was based on NTC's negligence in failing to stuff into containers 20 cartons of Dan River goods. As the evidence shows that one of the 20 cartons was stuffed and delivered in accordance with Dan River's instructions, we will exercise our power to eliminate this item which is unsupported by the evidence. *See Denby* v. *Davis, Administrator,* 212 Va. 836, 842, 188 S.E.2d 226, 231 (1972). Accordingly, we shall modify the judgment under review by

deducting therefrom the sum of $323.40, the claimed value of the carton, and affirm the balance of the judgment for the sum of $3,463.20, with interest from January 26, 1973. Having substantially prevailed on this appeal, U. S. Lines will recover its costs here.

*Modified and affirmed.*