## Richmond

PHILIP MORRIS, INC. V. OLD DOMINION FREIGHT LINE, ET
AL., NORFOLK TERMINAL CORPORATION V. PHILIP
MORRIS, INC., OLD DOMINION FREIGHT
LINE V. PHILIP MORRIS, INC., ET AL.

August 28, 1974.

Records Nos. 730692, 730698, and 730723.

Present, All the Justices.

*Joseph A. Gawrys (Vandeventer, Black, Meredith & Martin,* on brief), for plaintiff in error in Record No. 730692.

*R. Arthur Jett, Jr.; Joseph A. Leafe (Jett, Berkley, Furr & Heilig; Rixey & Rixey,* on brief), for defendants in error in Record No. 730692.

*R. Arthur Jett, Jr. (Jett, Berkley, Furr & Heilig,* on brief), for plaintiff in error in Record No. 730698.

*Joseph A. Gawrys; Joseph A. Leafe (Vandeventer, Black, Meredith & Martin; Rixey & Rixey,* on brief), for defendants in error in Record No. 730698.

*Joseph A. Leafe (Rixey & Rixey,* on brief), for plaintiff in error in Record No. 730723.

*Joseph A. Gawrys; R. Arthur Jett, Jr.* (*Vandeventer, Black, Meredith & Martin; Jett, Berkley, Furr & Heilig,* on briefs), for defendants in error in Record No. 730723.

Carrico, J., delivered the opinion of the court.

This case involves a claim for loss of a cargo consisting of one thousand cases of cigarettes owned by Philip Morris, Inc. The cargo was contained in an Old Dominion Freight Line trailer which was stolen while parked awaiting unloading at a storage facility operated by Norfolk Terminal Corporation. In light of the positions assumed by the parties, Philip Morris is entitled to recover for the loss from one or the other of the two defendants, Old Dominion or the Terminal Corporation. The question for decision, therefore, is upon which defendant liability should fall.

When Philip Morris brought the present action against Old Dominion and the Terminal Corporation, each defendant sought by cross-claim to fix liability upon and to secure "full indemnity" from the other for the loss. The trial court exonerated the Terminal Corporation from all liability, but entered judgment for $116,970.67, including accrued interest, in favor of Philip Morris against Old Dominion.

In the appeal and cross-appeals now under consideration, Old Dominion seeks reversal of the judgment against it or, in the alternative, judgment in its favor on its cross-claim against the Terminal Corporation for the full amount of the Philip Morris recovery (Record No. 730723). Philip Morris prays for affirmance of its judgment against Old Dominion or, failing that, judgment against the Terminal Corporation for the amount recovered in the trial court (Record No. 730692). The Terminal Corporation requests that we affirm the findings below or, if we reverse to its detriment, that we enter judgment in its favor on its cross-claim against Old Dominion for the full amount of the Philip Morris recovery (Record No. 730698).

The record shows that on October 8, 1969, Philip Morris delivered the cargo to Old Dominion in Richmond for transportation on consignment by straight bill of lading to the S. S. RUBENS at Norfolk International Terminal, a storage and docking facility operated by the Terminal Corporation. Old Dominion accepted the shipment, issued its bill of lading therefor, and prepared a waybill to accompany the cargo.

At approximately 1:00 p.m. on October 10, 1969, the tractor-trailer conveying the cargo arrived at the terminal facility in Norfolk. Old Dominion's representative presented the waybill to a Terminal Corporation employee. The bill was stamped "Received"; was logged in a daily "truck record"; and was retained by the Terminal Corporation. The cargo was to be unloaded by shortshoremen employed by the Terminal Corporation.

Upon advice that the trailer could not be unloaded until the next day, Old Dominion elected to leave the trailer overnight at the terminal facility rather than remove it to its own terminal in Norfolk. The trailer, sealed but not locked, was "spotted," or parked, at the warehouse where it was to be unloaded. The tractor was detached and removed.

During the night, thieves, using an Old Dominion tractor they had stolen from another location, removed the trailer and its cargo from the terminal facility. Exit from the terminal was accomplished by use of a pass exhibited by the thieves to the security guard posted at the terminal gate. The pass had been obtained earlier from the Terminal Corporation by one of the thieves who represented himself as an Old Dominion employee. The pass was issued in violation of the Terminal Corporation's normal procedures.

The thieves transported the trailer and its cargo to New York City. Although the trailer was recovered, the cargo was not. The present litigation ensued.

Under Virginia law and the terms of the bill of lading issued in this case, Old Dominion was an insurer responsible for the safe carriage and delivery of the cargo, except for such loss as may have been caused by an act of God, the public enemy, or the shipper, or by the authority of law or the inherent nature of the cargo. *Norfolk Terminal Corporation* v. *United States Lines*, 215 Va. 80, 205 S.E.2d 400 (1974). Here, Old Dominion does not contend that the loss in question resulted from an excepted cause. Rather, relying upon cases which are inapplicable or tend to support the position of its opponents, Old Dominion attempts to escape liability by insisting that it "had completed its delivery of the trailer load of cigarettes" before the loss occurred.

Delivery was complete, Old Dominion contends, because the waybill for the cargo, having been stamped "Received" and logged, was in the exclusive possession and control of the

Terminal Corporation; the trailer had been "spotted" at the appropriate warehouse for unloading by employees of the Terminal Corporation; and the Terminal Corporation had taken custody of the cargo and accepted delivery of the shipment.

There is, however, a fatal flaw in this contention: the evidence completely fails to establish that Old Dominion had completed delivery of the cargo in question. The evidence was uncontradicted that the stamping and logging of the waybill merely served to establish a sequence for unloading the shipment. It was also uncontradicted that until the cargo had been unloaded and the Terminal Corporation had given receipt therefor, Old Dominion was free to demand and secure return of the waybill and to remove the trailer and its contents from the Terminal property, with the waybill serving as an exit pass. Thus, contrary to Old Dominion's contentions, the waybill was not in the exclusive possession and control of the Terminal Corporation; the cargo was not in the custody of nor had it been accepted by the Terminal Corporation; and Old Dominion had not completed delivery. Old Dominion was liable, therefore, to Philip Morris for loss of the cargo in failing to deliver according to the terms of the contract of carriage.

This brings us to Old Dominion's alternative position — that, if liable to Philip Morris, it is entitled to judgment on its cross-claim against the Terminal Corporation for the full amount of the Philip Morris recovery. Here, Old Dominion argues that even if it had not completed delivery of the cargo, "the actual loss of the trailer load of cigarettes was caused solely by the actions" of the Terminal Corporation in negligently issuing the pass with which the thieves were permitted to remove the trailer from the terminal property.

It is elementary that the Terminal Corporation is liable to Old Dominion, if at all, only for the breach of some duty. In the context of this case, such a breach occurred, if at all, only from the negligent performance of some contractual obligation, arising from bailment or otherwise, which was undertaken by the Terminal Corporation and upon which Old Dominion relied. This is so because Old Dominion's cross-claim against the Terminal Corporation was based upon a demand for "full indemnity," a demand sounding purely in contract, and the case was tried below strictly upon contract theory.

Here, as before, Old Dominion's position is unsupported by the

evidence. Old Dominion has been unable to point to any contractual obligation, whether arising from bailment or otherwise, which may be enforced against the Terminal Corporation. Indeed, it was Old Dominion's own decision to leave the trailer overnight at the terminal facility, rather than remove it to its own terminal, and the decision was made merely to save expense. The Terminal Corporation was not requested to safeguard the cargo; it was not advised that the trailer would remain overnight at the terminal facility; and, in any event, it did not assume responsibility for either the trailer or the cargo. Thus, Old Dominion, having relied upon the exigencies of its own situation rather than upon an obligation undertaken by the Terminal Corporation, has no basis for recovery against the Terminal Corporation.

For the reasons assigned, the findings and judgment of the trial court will be affirmed.

*Affirmed.*